**Michael Edward SHONE**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

July 14, 1971.

Kinsey B. Fearon, Henry N. Berry, III, Portland, for plaintiff.

John W. Benoit, Jr., Deputy Atty. Gen., Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

This case comes before us on report based upon an agreed statement delineating the issues and the facts. It was agreed that there were three issues:

1. Did the Administrative transfer from the Men's Correctional Center to Maine State Prison violate the Petitioner's "rights to due process and equal protection as guaranteed by the 11th Amendment [sic] [1] to the United States Constitution"?

2. Was the indictment fatally defective "in that it did not allege that the building therein mentioned was a building in which valuable things are kept"?

3. Assuming the invalidity of the indictment, did the advice of Petitioner's Counsel to plead guilty "amount to such incompetence as to have deprived the Petitioner of his right to due process of law as guaranteed by the 14th Amendment to the United States Constitution"?

The Petitioner had filed in the Cumberland County Superior Court three habeas

1. This is a typographical error, the correct reference being to the 14th Amendment.

corpus petitions claiming the right to post-conviction relief, and on February 25, 1971, by agreement of all parties the actions were consolidated for the purpose of the report to the Law Court.

■ The Petitioner, being charged in two indictments alleging felonies, and being represented by Court appointed Counsel, pled guilty to both and was committed to the Men's Correctional Center to serve concurrent sentences. Subsequently, he was, without hearing, administratively transferred to the Maine State Prison pursuant to 34 M.R.S.A. § 808-A, the order reciting that it was "For reasons of security," one of the statutory reasons for so doing. If we assume that his two convictions were valid, this administrative transfer poses no constitutional issue. In Brown v. State, (Me.1971) 274 A.2d 717, this Court found no constitutional issue in the then 34 M.R.S.A. § 808, and approved the administrative transfer of *Brown* from the Men's Correctional Center to the Maine State Prison without notice or hearing. § 34 M.R.S.A. 808 is now superseded by 34 M.R.S.A. 808-A, which new transfer statute, by limiting eligibility for transfer under the statute to those convicted of a felony and by directing that "any inmate transferred under this section shall not be subject to confinement at hard labor as provided in section 701, but shall be entitled to treatment consistent with the purposes of the center," has eliminated any doubt which may have earlier existed as to the constitutionality of our administrative transfer statute. The present statute makes it clear that these two institutions are now even less "functionally distinct" than they were at the time *Brown*, supra, was decided when utilized for those Men's Correctional Center inmates subject to transfer. The first issue reported is answered in the negative.

■ On the second issue the Plaintiff asserts that his convictions were invalid in that he would not have pled guilty to either of the felonies if he had realized that one of the indictments did not allege a criminal violation. The indictment claimed to be fatally defective is as follows:

"THE GRAND JURY CHARGES:

That, on or about the first day of August, 1969, in the City of Portland, County of Cumberland and State of Maine, the above named defendant, Michael Edward Shone, in the nighttime of said day, the building of Midtown Associates, and occupied by the New England Telephone and Telegraph Company, a corporation existing under the laws of the State of Maine, situated at # 1 Congress Street, Portland, Maine, there situate, feloniously did break and enter, with the intent the goods, chattels and property of the said New England Telephone and Telegraph Company, in said building, then and there feloniously to steal, take and carry away."

This indictment is based on an alleged violation of 17 M.R.S.A. § 754, which provides:

"Whoever, with intent to commit * * * any larceny, breaks and enters * * * any dwelling house, or breaks and enters any office, bank, shop, store, warehouse, vessel, railroad car of any kind, motor vehicle, aircraft, house trailer, or *building in which valuable things are kept,* * * * shall be punished * * *." (Emphasis added.)

The Petitioner contends the indictment is fatally defective because it fails to use the statutory language and describe the building in precise terms as being one "in which valuable things are kept." We do not agree.

The technical requirements of criminal pleading, as we have frequently said, are now modified by the Maine Rules of Criminal Procedure. M.R.Crim.P. Rule 7(c) only requires that indictments contain "a plain, concise and definite written statement of the essential facts constituting the offense charged" and need contain only

**524**

such formalities as are "necessary to such statement." Such informality of pleading is limited by the requirement that every element of an offense be charged. 4 Barron and Holtzoff 59.

Does this indictment give the Petitioner adequate information from which he may conclude that the building of Midtown Associates is one "in which valuable things are kept"? We think it does.

We note that the indictment is captioned in bold type as follows: "INDICTMENT FOR VIOLATION OF T. 17 MRSA SECTION 754." With this knowledge of the statute involved, a fair reading of the allegation "[W]ith the intent the goods, chattels and property of the said New England Telephone and Telegraph Company, *in said building*, then and there feloniously to steal \* \* \*." (emphasis added) clearly indicates to a person of reasonable and normal intelligence that there were alleged to be "goods, chattels and property" "in said building" at the time of the felonious entry. State v. Charette, (1963) 159 Me. 124, 188 A.2d 898. The words "in said building" do more than merely modify the word "intent"; they serve also to allege that there were "things", namely, items of personal property, then in the building. Common sense dictates this conclusion. Webster defines the word "thing" as a concrete or tangible object and, in the plural, as "possessions or goods." Also, it has been held "[T]hat things personal, \* \* \* not only include things movable, but also something more; the whole of which is comprehended under the general name of *chattels,* which, Sir Edward Coke says, is a French word, signifying goods \* \* \*." People v. Holbrook, (N.Y.1816) 13 Johns. 90 at 94.

The final question to be answered is whether we have any right to draw the inference that the unspecified "goods, chattels and property" in the indictment are "valuable." We conclude such an inference is proper, bearing in mind that the rule *de minimis non curat lex* has no appli-

cation in criminal cases. "The stealing of 1 cent is larceny as truly as the stealing of $1,000." Frisbie v. United States, (1895) 157 U.S. 160 at 167, 15 S.Ct. 586, at 589, 39 L.Ed. 657, 50 Am.Jur.2d Larceny § 59 at 225 et seq. Vis-a-vis the owner and a thief, chattels have at least nominal value.

We note in this connection that M.R. Crim.P. Rule 7(f) provides for a Bill of Particulars and, if the Defendant had any question as to whether or not the "goods, chattels and property" were ·"valuable," this device was available to him.

We, therefore, conclude that the indictment, while not recommended as a model for future criminal pleading, contains a sufficient allegation that there were "valuable things" kept in this building at the time of the alleged felonious entry. The second issue is answered in the negative.

This answer obviates any response to the third issue reported which, as we have shown, was erroneously premised on the invalidity of the indictment.

In the reported actions, as consolidated, the entry is

Remanded to the Superior Court for entry of an appropriate order for denial of the petitions.