**STATE of Utah, Plaintiff and Appellee,**

v.

**Raymond Rick LYMAN, Defendant and Appellant.**

No. 971738–CA.

Court of Appeals of Utah.

Sept. 24, 1998.

---

4. Based on our disposition of the case, we do not address the merits of the district court's dismiss- al of the case.

Rodney G. Snow, Neil A. Kaplan, and Anneli R. Smith, Clyde, Snow & Swenson, P.C., Salt Lake City, for Appellant.

Jan Graham, Atty. Gen. and Barnard N. Madsen, Ass't. Atty. Gen., Criminal Appeals Div., Salt Lake City, for Appellee.

Before DAVIS, P.J., and WILKINS, Associate P.J., and GREENWOOD, J.

## OPINION

GREENWOOD, Judge:

Raymond Rick Lyman (defendant) appeals his conviction for theft of property valued at or in excess of $1000 but less than $5000, a third degree felony, in violation of Utah Code Ann. §§ 76–6–404 (1995) and 76–6–412(1)(b) (Supp.1996). We affirm the theft conviction but vacate the felony conviction and remand the case to the trial court with instructions.

## BACKGROUND[1]

Defendant is a co-owner of Lifephase Fitness Center (the Center) in Cedar City, Utah. Prior to April 6, 1996, defendant generally worked at the Center on Thursdays, Fridays, and Saturdays, and was the person primarily responsible for maintenance and cleaning. Therefore it was not unusual for defendant to go into a maintenance closet (the maintenance closet) located in the basement of the Center, adjacent to the Center's tanning room.

Shortly before Friday, April 5, 1996, Michelle Komarek, an aerobics teacher at the Center, noticed a hole near an electrical outlet in the tanning room on the wall bordering the maintenance closet. Although she did not tell any of the owners about the hole, she did tell Kelvin Minefee, a police officer who was a member of the Center. After confirming the existence of the hole, Officer Minefee spoke with Paula Douglas, a secretary at the Cedar City Police Department who worked out at the Center and used the tanning room. The next morning, Ms. Douglas told Detective Ken Stapley and Chief Pete Hansen about the hole. Ms. Douglas agreed to return to the Center on Saturday, April 6, to use the tanning room. Detective Stapley then spoke with Steve Brown, a co-owner of the Center, about conducting an investigation and using surveillance equipment to determine if anyone was using the hole to observe people in the tanning room. Mr. Brown gave Detective Stapley a key to the Center to use during the investigation.

At approximately 11:00 p.m. on April 5, Detective Stapley and Officer Roy Houchen set up surveillance equipment in the maintenance room. Detective Stapley observed that the hole was beneath a power outlet and that, on the maintenance room side, one had to remove a wood shelf and get down on one's hands and knees in order to see it. If the wood shelf was not set down carefully when moved, it would probably make a "very loud noise." Except for a shiny new extension cord, the surveillance equipment was concealed behind carpet remnants and pieces of sheetrock. No one unfamiliar with the room would have noticed anything suspicious.

Detective Stapley returned to the Center at about 8:30 a.m. on April 6 to activate the equipment. He saw one person in the cardiovascular room but made sure nobody saw him.

Stacie Bradshaw, an aerobics instructor, arrived at the Center between 7:30 and 8:00 a.m. on the 6th. She testified that no one else was there when she arrived. Defendant

---

1. We recite the evidence and all reasonable inferences drawn therefrom in a manner most favorable to the jury verdict. *See State v. Dunn,* 850 P.2d 1201, 1205–06 (Utah 1993).

arrived somewhere between 8:00 and 9:00 a.m.

When Ms. Douglas arrived at about 9:30 a.m., defendant was at the front desk. On her way to the weight room, Ms. Douglas saw a man, Chris Delahunty, repairing carpet. After about thirty-five minutes, she went back to the front desk and asked defendant if she could use the tanning room, as she usually did on Saturdays. When she got to the tanning room, Ms. Douglas turned on the fan and radio and then used the bed. About seven to ten minutes later, she heard a bang from the maintenance room. She tanned for a total of twenty minutes. After she left the tanning room, she walked through most of the rooms in the Center and noticed that defendant's truck was gone. When she left the Center at 11:05, defendant's truck was still not there.

Chris Delahunty, defendant's brother-in-law, arrived between 9:00 and 9:30 a.m. to do some carpet repair work. He met defendant in the hallway, close to the tanning room. Mr. Delahunty started working and saw defendant on and off. As he returned downstairs, Mr. Delahunty saw defendant enter the maintenance closet. Defendant did not stay in the closet long. Sometime between 10:30 and 10:45 a.m., Mr. Delahunty finished working downstairs and went upstairs to the aerobics room. At about 11:00 a.m., defendant entered the aerobics room carrying a bucket of spackling compound and asked if he could borrow one of Mr. Delahunty's putty knives. Shortly thereafter, defendant returned the tool and asked Mr. Delahunty to watch the front desk while defendant "skipped out" for a little while. Mr. Delahunty's wife arrived at about 11:35 a.m., shortly after defendant left. Mr. Delahunty testified that defendant was gone about half an hour.

When Detective Stapley returned to the Center at about 7:00 p.m. on April 6, some of the sheetrock pieces in the maintenance closet had been moved and all the surveillance equipment was gone. After speaking with Officer Houchen and Chief Hansen, Detective Stapley decided to talk with defendant. Detective Stapley and Officer Kelly Edwards arrived at defendant's home about 9:00 or 9:30 p.m. When Detective Stapley advised defendant of the hole and the missing surveillance equipment, defendant's first response was, "I was never in the maintenance room that day, and I don't know nothing about no hole." At least three times, defendant denied having gone into the closet that day. Defendant also initially denied leaving the Center that day, but later "changed his story and stated he left several times that day but continued to state he wasn't in the maintenance room that day."

Detective Stapley returned to the Center at around 10:30 p.m. At that time, he noticed that the hole had been spackled and that, although the tanning room side was dry, the maintenance closet side "was still damp to the touch."

At trial, Officer Houchen testified that the stolen surveillance equipment was special order equipment, all of which would fit into a small suitcase or duffel bag and weighed about twenty to twenty-five pounds. The total purchase price of the equipment was $1257.73. However, this total included $288.00 paid for a VCR on January 18, 1989, as well as $298.33 for a pinhole camera, $198.46 for a special lens, and $289.54 for a small monitor, all of which were purchased on August 10, 1995. The total purchase price absent the VCR was $969.73. When asked what the fair market value of the equipment was on the date of the theft, Officer Houchen stated that he did not know but that it would have been worth less on the date of the theft than on the date it was purchased. No other evidence as to the value of the equipment was presented. The equipment was never recovered.

Defendant was charged with one count of theft and a two-day trial was held June 30 and July 1, 1997. At the close of the State's case, defendant moved for a dismissal or directed verdict. The trial court denied the motion. After the jury found defendant guilty of felony theft, defendant filed a motion to arrest judgment. The court denied this motion as well. This appeal followed.

## ISSUES & STANDARD OF REVIEW

Defendant raises two issues on appeal. He first argues that the trial court erred in

denying his motion for dismissal because the State's evidence did not exclude every reasonable hypothesis of innocence and was thus insufficient to prove each element of the crime beyond a reasonable doubt. Second, defendant argues that there was insufficient evidence of the equipment's fair market value on the date it was stolen to support the felony conviction.

■ When reviewing a jury verdict for sufficient evidence, this court must

"review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury ... [and] reverse ... only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted."

*State v. Hamilton,* 827 P.2d 232, 236 (Utah 1992) (citations omitted).[2]

■ When a conviction is based solely on circumstantial evidence, we review the evidence to determine:

"(1) whether there is any evidence that supports each and every element of the crime charged, and (2) whether the inferences that can be drawn from that evidence have a basis in logic and reasonable human experience sufficient to prove each legal element of the offense beyond a reasonable doubt. A guilty verdict is not legally valid if it is based solely on inferences that give rise to only remote or speculative possibilities of guilt."

*State v. Brown,* 948 P.2d 337, 344 (Utah 1997) (quoting *State v. Workman,* 852 P.2d 981, 985 (Utah 1993)). Thus, the "fabric of evidence against the defendant must cover

the gap between the presumption of innocence and the proof of guilt." *State v. Petree,* 659 P.2d 443, 444–45 (Utah 1983). However, where the trial court has considered a defendant's insufficient evidence claim, as is the case here, such action " 'lends further weight to the jury's verdict.' " *Brown,* 948 P.2d at 344 (citation omitted).

## ANALYSIS

### *Sufficiency of Evidence to Support Theft Conviction*

■ In asserting his claim that there was insufficient evidence to identify him as the thief in this case, defendant argues that the only evidence presented at trial was circumstantial and that such evidence failed to exclude the alternative hypothesis that someone else stole the equipment.

■ It is well settled in this state that "a conviction can be based on sufficient circumstantial evidence." *State v. Brown,* 948 P.2d 337, 344 (Utah 1997); *see also State v. Nickles,* 728 P.2d 123, 126 (Utah 1986); *State v. Blubaugh,* 904 P.2d 688, 694 (Utah Ct.App. 1995). "Circumstantial evidence need not be regarded as inferior evidence if it is of such quality and quantity as to justify a jury in determining guilt beyond a reasonable doubt, and is sufficient to sustain a conviction." *Nickles,* 728 P.2d at 127.

Furthermore, "[t]he existence of one or more alternate reasonable hypotheses does not necessarily prevent the jury from concluding that defendant is guilty beyond a reasonable doubt." *Blubaugh,* 904 P.2d at 695; *see also United States v. Mains,* 33 F.3d 1222, 1228 (10th Cir.1994) (stating although evidence may allow hypothesis " 'that another individual may have [committed the crime], the evidence required to support a

---

**2.** Although defendant challenges the trial court's denial of his motion to dismiss at the close of the State's case-in-chief, defendant cites the standard of review applicable to jury verdicts and not the standard applicable to motions to dismiss. *See State v. Noren,* 704 P.2d 568, 570 (Utah 1985) (per curiam) ("A defendant's motion to dismiss ... requires the trial court to determine whether the defendant must proceed with the introduction of evidence in his defense. In order to submit a question to the jury, it is necessary that the prosecution present some evidence of every

element needed to make out a cause of action." (citations omitted)); *and see Sorenson v. Kennecott–Utah Copper Corp.,* 873 P.2d 1141, 1144 (Utah Ct.App.1994) (stating whether party has established prima facie case is question of law reviewed for correctness). However, because we conclude that the State's evidence was sufficient to support the jury's verdict at least as to the theft, we necessarily conclude that the evidence was sufficient to support the trial court's denial of defendant's motion.

verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt' ") (quoting *United States v. Parrish,* 925 F.2d 1293, 1297 (10th Cir.1991)). "[W]e must simply ' "insur[e] that there is sufficient competent evidence as to each element of the charge to enable a jury to find, beyond a reasonable doubt, that the defendant committed the crime." ' " *Blubaugh,* 904 P.2d at 695 (quoting *State v. James,* 819 P.2d 781, 784 (Utah 1991) (citation omitted)).[3] "[I]t is [then] within the province of the jury to judge the credibility of the testimony, assign weight to the evidence, and reject these alternate hypotheses." *Id.* at 694–95.[4]

In applying these principles, we note that defendant does not challenge the evidence that a theft occurred; he argues only that there was insufficient evidence to conclude that he was the thief. We disagree.

The evidence establishes that, at the time of the theft, defendant was the person primarily responsible for maintenance and cleaning at the Center, and thus was familiar with the maintenance closet adjacent to the Center's tanning room. The evidence also establishes that, when the officers placed the surveillance equipment in the maintenance closet, the only visible item was a new extension cord which would have gone unnoticed by anyone unfamiliar with the closet's contents.

The evidence further establishes that April 6 was a relatively slow day at the Center due to the Easter holiday and that defendant was one of the few people there that day. Defendant apparently arrived between 8:00 and 9:00 a.m. Then, at about the same time that Paula Douglas asked to use the tanning room, defendant approached Chris Delahunty carrying a bucket of spackling compound, and asked Mr. Delahunty to borrow a putty knife. Ms. Douglas remained in the tanning room approximately twenty minutes, during which time she heard a loud noise coming from the maintenance closet. Shortly thereafter, defendant returned the putty knife to Mr. Delahunty and left the Center for approximately one-half hour. Defendant was the only person seen in the maintenance closet that day, and when Detective Stapley realized that the surveillance equipment had been stolen, he also observed that the hole next to the electrical outlet had been freshly spackled.

Finally, the evidence reveals that, when approached by Detective Stapley and Officer Edwards, defendant consistently denied having gone into the maintenance closet that day and initially stated that he had never left the Center that day, although witnesses testified he had done both.

We conclude this evidence is sufficient to sustain the jury's verdict that defendant was the person who stole the surveillance equipment. We find support for our conclusion in the recent supreme court case of *State v. Brown,* 948 P.2d 337 (Utah 1997). In *Brown,* the aggravated murder conviction was established solely by circumstantial evidence. The victim in that case was shot three times, apparently while sleeping. There were no signs of forced entry into his home, the defendant was the only one with a key, and the defendant could not explain her whereabouts at the time of the murder. In addition, her familiarity with the victim and

---

3. Although defendant asserts that our recent opinion in *State v. Layman,* 953 P.2d 782 (Utah Ct.App.1998), places a burden on the State to disprove every possible reasonable alternative hypothesis, *Layman* did not in fact go that far. In *Layman,* we specifically noted that the quality and quantity of circumstantial evidence in that case was insufficient to reasonably exclude reasonable alternative hypotheses and, thus, that the evidence required the fact finder to indulge inference upon inference to reach a conclusion that the defendant was guilty beyond a reasonable doubt. *See id.* at 787–92 & nn. 4, 6, 9. We do not believe the evidence in this case suffers from the same deficiency.

4. Contrary to defendant's suggestion, a trial court is not required to instruct the jury on alternative reasonable hypotheses. The trial court need only instruct the jury regarding the prosecution's burden of proof. *See State v. McClain,* 706 P.2d 603, 606 (Utah 1985); *State v. Eagle,* 611 P.2d 1211, 1213 (Utah 1980). " 'This requirement may be met using [either] a "reasonable doubt" instruction or a "reasonable alternative hypothesis" instruction.' " *McClain,* 706 P.2d at 606 (citations omitted)); *see also State v. Robertson,* 932 P.2d 1219, 1233 (Utah 1997). In this case, the trial court gave a reasonable doubt instruction.

his home made it probable that she knew where he kept his gun and financial papers and the only things stolen from the home were the gun and certain financial papers, including forged checks made payable to the defendant. *See id.* at 345–46. Finally, the defendant had made inconsistent statements to the police concerning her reasons for leaving a pot of soup on the porch instead of using her key to bring it inside. *See id.* at 346; *see also State v. Smith,* 726 P.2d 1232, 1234–35 & nn. 1, 2 (Utah 1986) (finding evidentiary support for jury's inference that possession of stolen property supported theft conviction when other evidence, including defendant's inconsistent statements, supported conclusion that defendant had stolen the property); *McClain,* 706 P.2d at 605 (holding "intent to prove a crime 'may be inferred from the actions of the defendant or from surrounding circumstances'" (quoting *State v. Murphy,* 674 P.2d 1220, 1223 (Utah 1983)). The *Brown* court concluded that "the evidence and the reasonable inferences drawn therefrom" were not "so inconclusive and inherently improbable that the jury could not have found that each element of the crime had been established beyond a reasonable doubt." *Brown,* 948 P.2d at 346; *see also Blubaugh,* 904 P.2d at 695–96 (affirming murder conviction for death of girlfriend's young child despite some evidence suggesting child's mother was perpetrator). We believe the evidence in this case—particularly defendant's apparently singular familiarity with the maintenance closet, his being seen with spackling compound and a putty knife at about the same time Douglas heard a loud noise from the maintenance closet, his departure from the Center shortly thereafter, and his repeated denials to the police—is, like the evidence in *Brown,* sufficient for the jury to have concluded each element of the crime had been proven beyond a reasonable doubt.

We thus affirm defendant's conviction for theft.

### Sufficiency of Evidence of Fair Market Value

■ Defendant also claims there was insufficient evidence from which the jury could determine that the stolen surveillance equipment had a fair market value on the date of the theft in excess of $1000 to support a felony conviction. With this contention we agree.

In *State v. Logan,* 563 P.2d 811, 813 (Utah 1977), our supreme court held that "the market-value test [is] the appropriate test to be used in determining the value of stolen property not otherwise provided for in our statute." *See also State v. Slowe,* 728 P.2d 110, 112 (Utah 1986). The court defined market value as the "fair market value at the time and place where the alleged crime was committed" and defined fair market value as "what the owner could expect to receive, and the amount a willing buyer would pay to the true owner for the stolen item." *Logan,* 563 P.2d at 813 (footnotes omitted).[5]

■ Under this definition, purchase price alone. is generally not sufficient to prove the value of goods on the date they were stolen. *Cf. Cannon v. State,* 265 Ark. 270, 578 S.W.2d 20, 22 (Ark.1979) ("Original cost, however, is not substantial evidence of market value when ... present market value in no way reflects that cost"); *People v. Paris,* 182 Colo. 148, 511 P.2d 893, 894 (Colo.1973) (en banc) (stating testimony "as to the purchase price of the goods ... is competent evidence of fair market value only where the goods are so new, and thus, have depreciated in value so insubstantially, as to allow a reasonable inference that the purchase price is comparable to current fair market value"); *Zellers v. United States,* 682 A.2d 1118, 1120 (D.C.1996) (holding reliance on purchase price evidence requires consideration of type of goods involved, their condition at time of loss, and rate at which such goods depreciate); *Negron v. State,* 306 So.2d 104, 108 (Fla.1974) (holding that although "original market cost of the property, the manner in which it has been used, its general condition and quality, [and] the percentage of depreciation since its purchase or construction are elements of proof to be submitted to the jury

---

**5.** Jury instruction 12 in this case defined "fair market value" as "the price the owner could expect to receive, and which a willing buyer would pay for the item taken, given the area where the loss occurred and as of the date the loss occurred."

to aid it in ascertaining value in such cases[,] . . . testimony as to the *cost* of stolen property is insufficient in itself to establish the value of [sic] the time of the theft." (emphasis added)).

This is especially so where certain goods stolen were purchased substantially prior to the theft and the aggregate price paid for the goods is not significantly greater than the $1000 threshold amount distinguishing felony theft from misdemeanor theft under our statutory scheme.[6] *See, e.g., United States v. Thweatt,* 433 F.2d 1226, 1232 (D.C.Cir.1970) (stating " '[a] fact which distinguishes a violation punishable by imprisonment for not more than one year from a violation punishable by imprisonment for ten years cannot be permitted to rest upon conjecture or surmise.' " (citation omitted)); *Zellers,* 682 A.2d at 1121 (stating "we have been very strict in requiring affirmative proof of value, especially when the value alleged is close to the line dividing one offense from another" (citation omitted)); *cf. Slowe,* 728 P.2d at 112 (holding testimony that value of good stolen was between $650 and $1,200 inadequate to sustain felony conviction where statute required value in excess of $1,000).

In this case, the total purchase price of the stolen equipment—including a VCR purchased seven years prior to the theft and numerous pieces purchased eight months prior—was only $1257.53. The State presented no evidence concerning the condition of the equipment at the time of the theft or the rate at which the equipment would depreciate. Thus, the jury had no basis upon which to conclude that the value of the equipment on the date of theft equaled or exceeded $1000. We must therefore vacate defendant's felony conviction.

■ This conclusion, however, does not end our analysis. Although the evidence does not support defendant's conviction for felony theft, we, as an appellate court, may direct entry of judgment of conviction for misdemeanor theft if the evidence supports that judgment. *See State v. Dunn,* 850 P.2d 1201, 1209, 1211 (Utah 1993) (holding appellate court possesses general power to modify criminal judgments and may enter judgment on lesser included offense if trier of fact necessarily found facts sufficient to constitute the lesser offense and error did not affect such findings); *State v. Bindrup,* 655 P.2d 674, 676 (Utah 1982) (ordering judgment for lesser included offense based on defendant's admission of requisite intent).

The sole issue remaining, then, is whether there was sufficient evidence of the equipment's value to support a conviction of defendant for misdemeanor theft. We held above that the evidence was insufficient to support a conclusion that the value of the equipment on the date of the theft exceeded $1000. For essentially the same reasons—i.e., that the evidence was insufficient to deduce even an estimated value of the equipment on the date of the theft—the evidence was also insufficient to conclude that the value of the equipment equaled or exceeded $300, as required for conviction of a class A misdemeanor. *See* Utah Code Ann. § 76–6–412 (Supp.1996).

■ However, our inability to assign an actual value to the equipment on the date of the theft does not mean that the equipment was without value altogether. *See Shone v. State,* 279 A.2d 522, 524 (Me.1971) (concluding "inference that the unspecified 'goods, chattels and property' in the indictment are 'valuable' . . . is proper, bearing in mind that the rule *de minimis non curat lex* has no application in criminal cases. 'The stealing of 1 cent is larceny as truly as the stealing of $1,000.' ") (citation omitted)); *State v. Garza,* 241 Neb. 256, 487 N.W.2d 551, 557–58 (Neb. 1992) (holding finding that stolen property had value greater than $300 was unsupported by the evidence but that "evidence shows, beyond a reasonable doubt, that the property stolen . . . had some intrinsic value that translates into nominal market value, not-

---

6. Section 76–6–412 of the Utah Code provides:

   (1) Theft of property . . . shall be punishable:
     . . .
    (b) as a felony of the third degree if:
    (i) the value of the property . . . is or exceeds $1,000 but is less than $5,000; . . .

    (c) as a class A misdemeanor if the value of the property stolen is or exceeds $300 but is less than $1,000; or
    (d) as a class B misdemeanor if the value of the property stolen is less than $300.
Utah Code Ann. § 76–6–412 (Supp.1996).

withstanding the absence of evidence establishing a specific value for the stolen property"); *State v. Lopez*, 160 N.J.Super. 30, 388 A.2d 1273, 1275 (N.J.Super.1978) (noting "cases hold that proof of specific value is not required to convict for the petty offense of larceny, so long as the stolen object had some value to the owner that may be inferred from the evidence or may be judicially noticed").

The evidence is sufficient in this case to infer that the equipment stolen had at least some value on the date of the theft. Thus, the evidence is sufficient to convict defendant of a class B misdemeanor theft.

## CONCLUSION

We conclude that the evidence in this case was sufficient to support defendant's conviction for theft. However, the evidence of the equipment's fair market value on the date of the theft was not sufficient to support a conviction for felony theft. We thus vacate defendant's conviction for felony theft and remand this case to the trial court with directions to enter judgment against defendant for theft punishable as a class B misdemeanor and to sentence defendant accordingly.

DAVIS, P.J., concurs.

WILKINS, Associate P.J., concurs in the result.