Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/12/2026 08:14 AM CDT

State of Nebraska, appellee, v.
Robert J. Payne, appellant.

___ N.W.3d ___

Filed May 12, 2026.    No. A-25-630.

1. **Criminal Law: Courts: Appeal and Error.** In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion.

2. **____: ____: ____.** When deciding appeals from criminal convictions in county court, an appellate court applies the same standards of review that it applies to decide appeals from criminal convictions in district court.

3. **Jury Instructions.** Whether jury instructions given by a trial court are correct is a question of law.

4. **Judgments: Appeal and Error.** On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.

5. **Criminal Law: Convictions: Evidence: Appeal and Error.** When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

6. **Theft: Value of Goods: Appeal and Error.** When a fact finder determines the value of property in a theft case, an appellate court will not set aside the finding unless it is clearly erroneous.

7. **Jury Instructions.** In giving instructions to the jury, it is proper for the court to describe the offense in the language of the statute.

8. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct

statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

9. **Jury Instructions: Appeal and Error.** All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.

10. **Jury Instructions.** In instructing a jury, the trial court is not required to define language commonly used and generally understood.

11. **Theft: Value of Goods: Proof.** In a theft case, the value to be proved is market value at the time and place where the property was criminally appropriated.

12. **Value of Goods: Proof.** There is no better way of showing the market value of any article than the price at which it and others of its class are being offered and sold on the market.

13. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

14. **Criminal Law: Evidence: Juries.** In a criminal case, the evidence upon which a jury may rely in making its findings may be direct, circumstantial, or a combination thereof.

15. **Circumstantial Evidence.** Circumstantial evidence is not inherently less probative than direct evidence.

16. ____. In finding a defendant guilty beyond a reasonable doubt, a fact finder may rely upon circumstantial evidence and the inferences that may be drawn therefrom.

17. **Theft: Value of Goods: Proof.** Although Neb. Rev. Stat. § 28-518(8) (Cum. Supp. 2024) requires some value to be proved as an element of a theft offense, the statutory language does not require proof of a particular threshold value.

18. **Theft: Value of Goods: Evidence: Proof.** An item's market value at the time of the theft may be established by either direct or circumstantial evidence, and it presents a question of fact to be resolved by the fact finder.

19. **Theft: Value of Goods: Proof.** The value of the stolen property may be established by proof of the original cost of the item reduced to reflect the actual condition of the property, in terms of how long it has been used and its state of utility or damage.

20. **Theft: Value of Goods: Evidence.** Evidence of purchase price, together with evidence concerning the age, condition, and utility of the item, may afford a basis for determining market value.

21. **Theft: Value of Goods: Appeal and Error.** When a fact finder determines the value of property in a theft case, an appellate court will not set aside the finding unless it is clearly erroneous.

22. **Theft: Value of Goods: Circumstantial Evidence.** The market value of stolen property at the time of the crime may be established circumstantially, as well as by direct evidence.

23. **Theft: Value of Goods: Evidence: Juries.** The ultimate resolution of the value of the property at the time and place of the taking is clearly a fact question for the decision of the jury from the evidence adduced.

24. **Value of Goods: Expert Witnesses.** Generally, while the preferred method of establishing value may be by expert testimony, the purchase price paid by the owner is admissible as a factor for the jury to consider in determining market value when it is not too remote in time and bears a reasonable relation to market value.

25. **Theft: Value of Goods: Evidence.** Evidence of cost together with evidence concerning age, condition, and utility of the stolen item may afford a basis for determining value.

26. **Value of Goods: Proof.** Evidence of the purchase price of the goods is competent evidence of fair market value only where the goods are so new, and thus, have depreciated in value so insubstantially as to allow a reasonable inference that the purchase price is comparable to the fair market value.

Appeal from the District Court for Lancaster County, Lori A. Maret, Judge, on appeal thereto from the County Court for Lancaster County, Matthew L. Acton, Judge. Judgment of District Court affirmed in part, and in part vacated and remanded for resentencing.

F. Matthew Aerni, of Liberty Law Group, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

RIEDMANN, Chief Judge, and BISHOP and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Robert J. Payne appeals from the Lancaster County District Court's order affirming Payne's county court jury conviction for theft by unlawful taking in an amount over $500 but less than $1,500 and the sentence imposed thereon. Payne argues on appeal that the trial court erred in overruling his proposed jury instruction and in finding that the evidence was sufficient to support the jury's determination that the value of the stolen property was more than $500. For the reasons stated herein, we affirm in part, and in part vacate and remand for resentencing.

## STATEMENT OF FACTS

### BACKGROUND

On July 24, 2024, shortly after 5 a.m., Lacey and Christopher Schneider reported to law enforcement that Lacey's red Trek bicycle had been stolen off their front porch in Lincoln, Nebraska. Lacey kept her bicycle near the end of their home's front porch, linked with a cable to three children's bicycles. Lacey testified that the cable had a locking mechanism to prevent theft and that the bicycles were covered with a tarp.

Lacey provided security camera footage to law enforcement that showed an individual coming up to the Schneiders' covered front porch two times. During the first incident, on July 23, 2024, at about 3 p.m., the individual came up to their porch. Lacey referred to this incident as "scouting." During the second incident, about 11 hours later, the individual walked onto the Schneiders' front porch with a boltcutter. Outside the view of the camera, the individual removed the tarp covering the bicycles, used the boltcutter to cut the cable securing the bicycles, and stole Lacey's bicycle. Lacey notified law

enforcement a little after 5 a.m. after checking the activity on her security system notifications.

About a month later, after an image from the Schneiders' surveillance video was posted on Lincoln's Crime Stoppers website, law enforcement received information identifying Payne as the suspect. Payne was arrested and charged in Lancaster County Court with theft by unlawful taking in an amount over $500 but less than $1,500, a Class I misdemeanor. See Neb. Rev. Stat. § 28-511 (Reissue 2016).

### JURY TRIAL

A jury trial was held in January 2025 with evidence received as previously set forth. The Schneiders' surveillance footage was also offered and received into evidence.

Regarding the value of the bicycle, the following colloquy occurred between the prosecutor and Lacey:

Q. Do you recall . . . [w]ho purchased the bike?

A. My husband.

Q. Do you recall about how much it cost?

A. I think the bike, itself, was around $800, and with the attachments, maybe $900.

Q. Altogether?

A. Uh-huh.

Q. The attachments being the water bottle cage —

A. The kickstand, the mount for the infant seat and the infant seat, itself.

Q. In addition to the water cage?

A. Correct.

Lacey testified that she and Christopher started locking up their bicycles and covering their bicycles with tarps for about 1 year due to the theft of another bicycle.

The following colloquy regarding the value of the stolen bicycle occurred between the prosecutor and Christopher:

Q. Now, your wife's bicycle, who purchased the bicycle?

A. I did.

Q. Do you recall when?

A. Spring of . . . '21.

Q. Spring of 2021?

A. Of '21, yes.

Q. Where did you purchase the bicycle?

A. Trek of Lincoln.

Q. I'm sorry, what was it?

A. It's now called Trek of Lincoln.

Q. Trek of Lincoln. Was it called something else in the —

A. It was Bicycle Rack at that point.

Q. The Bicycle Rack?

A. Yeah.

Q. And that's here in Lincoln?

A. Yes.

Q. Do you recall how much you spent purchasing the bicycle?

A. Everything together was about a thousand.

Q. When you say, "everything together," what do you mean?

A. It was the bike, a few small accessories and then a large children's seat to go on the back.

Q. Do you recall what the accessories were?

A. It would be like a helmet and kickstand because none of that stuff comes with it.

Q. Do you remember if there was anything else?

A. A water bottle holder. I think that's about it.

Q. And so when you value all of those items together, you're approximating it at about a thousand?

A. Yeah.

Q. Do you recall how much each item cost?

A. Off the top of my head, I don't.

Q. Would reviewing something refresh your recollection of the value of each item?

A. Yeah. We have the receipt so I could view that.

[Counsel:] May I approach?

Q. (By [counsel]) I'm putting what's been marked as Exhibit 7 — in front of you. Do you recognize Exhibit 7?

A. Yes.

Q. What is Exhibit 7?

A. It's the purchase order and sales receipt for the bike and accessories.

Q. And how do you recognize it?

A. It's got my name on it. I recognize it because it's mine.

Q. Was this given to you after you made your purchase?

A. Yes.

Q. Of the bicycle and all the items and accessories?

A. Yes.

Q. Is . . . this receipt a fair and accurate depiction of the prices of the items and accessories that you purchased as related to the bike and its accessories?

A. Yes.

[Exhibit 7 was offered and received into evidence.]

Q. . . . And in Exhibit [7], what are we looking at in terms of this receipt from the bike rack for this purchase of the bicycle and other accessories?

. . . .

A. What am I looking at?

Q. Yeah, so can you read off for us the different items in Exhibit 7?

A. Itemized, is the bike. It's a Verve 2, Rage Red. It was $699.99. Then we have a helmet; that was $40.49. A water bottle cage, $17.99. [An] integrated rear mount for the kid's bike, that was $22, and then the actual kid's, the . . . back rack small MIK black. It's a child seat for the back, $119.99.

Q. And when the bike was taken July 24th, or between July 23rd and July 24th, what items or accessories were with the bike?

A. Everything on that list was on that bike. Or sorry, minus the helmet. Everything minus the helmet.

Q. So everything on that list, except the helmet, was taken with the bike?

A. Correct.

Q. Were those accessories attached to the bike?

A. Yes.

Q. But [the] helmet was not?

A. No.

Following the close of the State's case in chief, Payne moved for a directed verdict on the basis that the State failed to meet its prima facie case that the bicycle's value was "$500 or more." The county court overruled this motion.

## Jury Instruction Conference

During the jury instruction conference, Payne requested that the jury instructions include a definition of the word "value" and provided a proposed definition as stated in *State v. Gartner*, 263 Neb. 153, 638 N.W.2d 849 (2002). The proposed jury instruction stated: "'Value' means the unlawfully taken property's market value as of the date of the commission of the offense and may account for the unlawfully taken property's age and condition as of the date of the commission of the offense."

The State objected to Payne's proposed jury instruction, arguing that the general definition of "value" is a straightforward term and that any layperson would understand the meaning of the word. The court subsequently provided an amended jury instruction No. 4; however, Payne's counsel again objected, stating: "Your Honor, thank you for adding the language you did. We would still object and ask for the entire language from our proposed instruction regarding the definition or value." The court declined, stating:

It will be given as I have written it. "Value" means the market value at the time and place where the property was criminally appropriated. That's the Nebraska Supreme Court speaking in 2020 on Dixon, and that is a direct quote from their opinion. And while the opinion goes on

to talk about how that can be proved, the law on what the term "value" is, is that one sentence.

The court subsequently instructed the jury that "'[v]alue' means the market value at the time and place where the property was criminally appropriated."

## Verdict and Sentence

The jury convicted Payne of theft, finding that the value of the property involved was $600. A sentencing hearing was held on January 24, 2025. The county court sentenced Payne to 365 days in the Lancaster County Correctional Facility "until fines and costs are paid" and ordered that the sentence run consecutively to any other sentence and that credit for days served "be determined by corrections." Payne was ordered to pay court costs, sheriff fees, and other fees in the total amount of $69.70, with "court costs to be sat out concurrent with jail sentence."

## Appeal to District Court

Payne timely appealed to the Lancaster County District Court. Payne asserted in his statement of errors that the trial court erred in (1) overruling his motion for directed verdict, (2) overruling his proposed verdict form, and (3) overruling his proposed jury instruction regarding the definition of "value," and that (4) the evidence was insufficient to support the jury's determination that the stolen bike had a value of more than $500 and less than $1,000. The district court found the errors claimed by Payne to be without merit and affirmed Payne's conviction and sentence.

Payne has now timely appealed from the district court's order affirming Payne's county court conviction and sentence.

## ASSIGNMENTS OF ERROR

Payne assigns that (1) the trial court erred in overruling his proposed jury instruction regarding the definition of "value" and (2) the evidence was insufficient to support the jury's

determination that the stolen property had a value of more than $500.

## STANDARD OF REVIEW

[1,2] In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Kalita*, 317 Neb. 906, 12 N.W.3d 499 (2024). When deciding appeals from criminal convictions in county court, an appellate court applies the same standards of review that it applies to decide appeals from criminal convictions in district court. *Id.*

[3,4] Whether jury instructions given by a trial court are correct is a question of law. *State v. Matteson*, 313 Neb. 435, 985 N.W.2d 1 (2023). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id.*

[5] When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

[6] When a fact finder determines the value of property in a theft case, an appellate court will not set aside the finding unless it is clearly erroneous. *State v. Fernandez*, 313 Neb. 745, 986 N.W.2d 53 (2023).

## ANALYSIS

### Proposed Jury Instruction

Payne first assigns as error that the trial court erred in overruling his proposed jury instruction regarding the definition of "value." Payne contends that overruling his proposed jury instruction on the definition of "value" "allowed for entry of judgment of a class I misdemeanor, as opposed to a class 2 misdemeanor, based on speculation." Brief for appellant at 9.

[7-10] In *State v. Duncan*, 293 Neb. 359, 372-73, 878 N.W.2d 363, 375 (2016), the Nebraska Supreme Court stated:

> In giving instructions to the jury, it is proper for the court to describe the offense in the language of the statute. To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.
>
> Jurors are accepted because they are men and women of common sense and have a common understanding of words ordinarily used in our language. In instructing a jury, the trial court is not required to define language commonly used and generally understood.

Here, Payne's proposed instruction stated: "'Value' means the unlawfully taken property's market value as of the date of the commission of the offense and may account for the unlawfully taken property's age and condition as of the date of the commission of the offense." The jury instruction given by the court stated that "'[v]alue' means the market value at the time and place where the property was criminally appropriated."

[11,12] Although the Nebraska Jury Instructions do not specifically define "value," the comment to NJI2d Crim. 3.6 provides that "'[m]arket value' at the time and place where the property was criminally appropriated determines the value of property in a theft charge." Further, in *State v. Dixon*, 306 Neb. 853, 869-70, 947 N.W.2d 563, 576 (2020), the Nebraska Supreme Court stated:

We have long held that in a theft case, the value to be proved is market value at the time and place where the property was criminally appropriated. And we have often observed, "There is no better way of showing the market value of any article than the price at which it and others of its class are being offered and sold on the market."

The court instructed the jury using the language set forth by the Nebraska Supreme Court in *Dixon, supra*. Here, because the court's jury instructions, as a whole, correctly stated the law, were not misleading, and adequately covered the issues supported by the evidence, Payne cannot show he was prejudiced by the court's failure to use Payne's proposed instruction on the definition of "value." This assignment of error fails.

## SUFFICIENCY OF EVIDENCE AS TO VALUE

Payne assigns and argues that the evidence was insufficient to support the jury's determination that the bicycle had a value of more than $500. Payne was convicted of theft by unlawful taking in an amount more than $500 but less than $1,500, a Class I misdemeanor. See § 28-511. He argues that there was no evidence of the market value of the bicycle and that the only evidence that was offered was the purchase price paid approximately 3 years prior to the alleged theft. Payne asserts that the evidence established only that the bicycle had an intrinsic value which supported only the grading elements of a Class II misdemeanor.

[13] In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Miller*, 312 Neb. 17, 978 N.W.2d 19 (2022). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt. *Id*.

[14-16] In a criminal case, the evidence upon which a jury may rely in making its findings may be direct, circumstantial, or a combination thereof. *State v. Escamilla*, 291 Neb. 181, 864 N.W.2d 376 (2015). Circumstantial evidence is not inherently less probative than direct evidence. *Id*. In finding a defendant guilty beyond a reasonable doubt, a fact finder may rely upon circumstantial evidence and the inferences that may be drawn therefrom. *Id*.

Section 28-511 provides, in relevant part, that "[a] person is guilty of theft if he or she takes, or exercises control over, movable property of another with the intent to deprive him or her thereof." And "[u]nder § 28-518, the greater the value of the property involved in a theft, the more severe the punishment which may be imposed on conviction for the theft." *State v. Fernandez*, 313 Neb. 745, 751, 986 N.W.2d 53, 59 (2023). As relevant to this appeal, the grading subsections of Neb. Rev. Stat. § 28-518 (Cum. Supp. 2024) provide:

> (3) Theft constitutes a Class I misdemeanor when the value of the thing involved is more than five hundred dollars but less than one thousand five hundred dollars.
> (4) Theft constitutes a Class II misdemeanor when the value of the thing involved is five hundred dollars or less.

[17] Section 28-518(9) provides that "[i]n any prosecution for theft under sections 28-509 to 28-518, value shall be an essential element of the offense that must be proved beyond a reasonable doubt." Although § 28-518(8) requires some intrinsic value to be proved as an element of a theft offense, the statutory language does not require proof of a particular threshold value. *State v. Duncan*, 294 Neb. 162, 882 N.W.2d 650 (2016).

[18-21] An item's market value at the time of the theft may be established by either direct or circumstantial evidence, and it presents a question of fact to be resolved by the fact finder. *State v. Dixon*, 306 Neb. 853, 947 N.W.2d 563 (2020). The

value of the stolen property may be established by proof of the original cost of the item reduced to reflect the actual condition of the property, in terms of how long it has been used and its state of utility or damage. *Id*. Evidence of purchase price, together with evidence concerning the age, condition, and utility of the item, may afford a basis for determining market value. *Id*. When a fact finder determines the value of property in a theft case, an appellate court will not set aside the finding unless it is clearly erroneous. *Id.*

Here, Christopher testified that he purchased the bicycle and all the attachments for Lacey in April 2021 and that the total purchase price for the bicycle, helmet, water bottle cage, kickstand, back rack, and child seat mount was $1,000.58. The cost of the bicycle alone was $699.99 in 2021, as evidenced by the sales receipt admitted into evidence during the trial. The evidence established that, at the time the bicycle was stolen, all the attachments were still on the bicycle except the helmet, all the family's bicycles were kept on a covered porch and were locked up in a bike rack with a cable running through them with a padlock, and the bicycles had been covered with a tarp for the past year following another incident where another bicycle was stolen. Notably, although the bicycle and its contents were purchased nearly 3 years before they were stolen, there was no evidence presented governing the current condition of the bicycle, how much it had been used, or its state of utility or damage. Despite a lack of evidence governing the bicycle's condition, the jury determined that the value of the bicycle was $600. In short, Payne argues there was insufficient evidence adduced at trial to support the jury's finding that the market value of the bicycle was over $500 but less than $1,500 when taken.

A similar argument was made in *State v. Gartner*, 263 Neb. 153, 638 N.W.2d 849 (2002). In *Gartner*, the appellant, a former Adams County assessor, was charged with theft after several items of county property were found in his possession after he left office. Two of those items were a new camera recently

purchased for $799 by the assessor's office approximately 1 month before it was stolen, with evidence adduced that the camera was unused and still in the box, and a fax machine purchased for $525 by the assessor's office 7 months before it was stolen with no evidence adduced regarding its condition at the time it was stolen. Following a jury trial, the appellant was convicted of theft pursuant to § 28-511(1), and in grading the offenses, the jury found the value of the camera was $799 and the value of the fax machine was $525, thus finding him guilty of a Class IV felony under § 28-518(2). We note that this statute has since been amended such that the gradation for theft in an amount over $500 but less than $1,500 is now a Class I misdemeanor found at § 28-518(3).

[22-26] In *Gartner*, the appellant challenged the grading of his offenses, arguing that there was insufficient evidence of current market value at the time the articles were stolen resulting in an improper gradation of the offenses. The Nebraska Supreme Court agreed as to the fax machine but not the camera. We quote at length from the Supreme Court's rationale because we find the analysis dispositive of the case at bar. As to the camera, the Supreme Court held:

[The] question is presented regarding the sufficiency of the evidence to sustain [the appellant's] conviction . . . for the theft of a digital camera. The jury determined that the digital camera was stolen on January 7, 1999, and that it was worth $799 at the time of the theft. The only evidence supporting this determination, however, is that the digital camera cost $799 when it was purchased on December 9, 1998, less than a month before the date on which the jury determined that the theft occurred.

We have stated: "While it is true that . . . it is necessary for the State to establish the market value of the stolen property as of the date of the commission of the offense, . . . we do not interpret this rule in such a narrow fashion as to require testimony of a witness or witnesses *in haec verba* that, at the specific time of

the taking of the stolen property, it had a market value of a specific amount. These facts may be established circumstantially, as well as by direct evidence, and the ultimate resolution of the value of the property at the time and place of the taking is clearly a fact question for the decision of the jury from the evidence adduced." (Emphasis in original.) *State v. Weik*, 206 Neb. 217, 221, 292 N.W.2d 289, 291 (1980).

Generally, while the preferred method of establishing value may be by expert testimony, the purchase price paid by the owner is admissible as a factor for the jury to consider in determining market value when it is not too remote in time and bears a reasonable relation to market value. See *Coley v. State*, 302 Ark. 526, 790 S.W.2d 899 (1990). The value of the stolen property at the time of the crime may be established by proof of the original cost of the item reduced to reflect the actual condition of the property, in terms of how long it has been used and its state of utility or damage. *People v. White*, 167 A.D.2d 256, 561 N.Y.S.2d 756 (1990). Evidence of cost together with evidence concerning age, condition, and utility of the stolen item may afford a basis for determining value. *People v. Langston*, 96 Ill. App. 3d 48, 420 N.E.2d 1090, 51 Ill. Dec. 532 (1981). See, also, e.g., [citations omitted] (cases finding purchase price to be sufficient evidence of market value where purchase is recent and condition of property is good).

Evidence of the purchase price of the goods, however, is competent evidence of fair market value only where the goods are so new, and thus, have depreciated in value so insubstantially as to allow a reasonable inference that the purchase price is comparable to the fair market value. See [citations omitted] (cases finding purchase price to be insufficient evidence of market value where evidence was not presented as to age or good condition of property).

In the instant case, the digital camera was purchased, new, less than a month prior to the time that the theft was found to have taken place. The evidence indicated that the camera had never been used and, in fact, had not been removed from its packaging before it was turned over to the prosecution. We also note that the purchase price of the camera was well in excess of the $500 threshold established by § 28-518(2) for a Class IV felony. See *White, supra* (original cost sufficient evidence of value where margin between cost and statutory threshold is wide). Compare *Lyman, supra* (original cost insufficient evidence of value where price paid for goods not significantly greater than statutory threshold).

Given these facts, we conclude that, in the light most favorable to the State, the purchase price of the digital camera was sufficient evidence of fair market value to support [the appellant's] conviction on count II of the information. The short amount of time between the purchase and the theft, in addition to the evidence of the camera's condition when stolen, supports a reasonable inference made by the trier of fact that the purchase price of the camera reflected the fair market value of the camera at the time of the theft.

*State v. Gartner*, 263 Neb. 153, 164-66, 638 N.W.2d 849, 859-61 (2002).

But in analyzing the record regarding the evidence adduced in support of market value governing the fax machine, the Supreme Court reached a different result. Again, we quote extensively from the Supreme Court's opinion:

The same principles applied to [the theft of the camera] lead to a different result with regard to . . . the theft of the fax machine. The fax machine was purchased on June 13, 1998, for a price of $525, and the jury found that the fax machine was stolen on January 7, 1999, and was still worth $525 at the time of the theft.

The fax machine was recovered by investigators on March 26, 1999. While [the appellant] testified that he had not opened the fax machine box, the only evidence presented regarding the condition of the fax machine at the time it was found came from a criminal investigator with the Nebraska State Patrol. The patrol investigator testified that he was not the one who actually located the fax machine and that the fax machine box had been opened when the investigator first saw it.

Thus, with respect to [the theft of the fax machine], the only evidence of the market value of the fax machine at the time of the theft is the $525 price at which the fax machine was purchased, nearly 7 months prior to the theft. There was no substantial evidence presented as to the condition of the fax machine at the time of the theft from which the jury could make any reasonable inference regarding depreciation. Furthermore, the value that the jury found for the item, $525, is only marginally greater than the statutory threshold for a felony theft conviction established by § 28-518(2). Compare *State v. Lyman*, 966 P.2d 278 (Utah App. 1998). Under the principles set forth above, we conclude that the evidence presented is insufficient to support the jury's determination regarding the value of the fax machine.

*State v. Gartner*, 263 Neb. at 166-67, 638 N.W.2d at 861.

We make a similar finding here. On this record, the bicycle and assorted bicycle equipment were purchased 3 years prior to the theft for $1,000.58. There was testimony that the stolen bicycle included all of the equipment except the helmet purchased for approximately $40. However, there was no evidence adduced regarding the condition of the bicycle or its assorted equipment some 3 years later at the time of the theft. Unlike the camera in *State v. Gartner, supra*, the bicycle was not new but was 3 years old. And there was absolutely no evidence adduced regarding the bicycle's current condition, including, but not limited to, how often it had been used,

whether the bicycle had been involved in prior accidents, or any other details governing the bicycle's current condition. Notwithstanding the lack of evidence of value, the jury concluded that the bicycle was worth $600 at the time of the theft, which, similar to the fax machine in *Gartner, supra*, is only marginally greater than the statutory threshold for a Class I misdemeanor under § 28-518(3).

While it is true that the original purchase price of the stolen items was $960.58, which is significantly greater than the $501 statutory threshold for a Class I misdemeanor theft, we find that a complete lack of evidence governing the bicycle's condition 3 years following its purchase left the jury without evidence to make a reasonable inference regarding depreciation and current market value. Accordingly, under the principles set forth above, we conclude the evidence presented was insufficient to support the jury's determination regarding the value of the bicycle.

Under similar circumstances in *State v. Gartner*, 263 Neb. 153, 638 N.W.2d 849 (2002), the Nebraska Supreme Court held that while the State failed to present sufficient evidence to support the jury's conclusion regarding the $525 market value of the fax machine at the time of the theft, the evidence established beyond a reasonable doubt that the fax machine had some intrinsic value that translated to at least nominal market value. Payne makes a similar concession here. Consequently, the evidence is sufficient to support Payne's conviction for theft. However, because the evidence of the specific value at the time of the theft is insufficient to support the gradation of the theft as a Class I misdemeanor, Payne's sentence for a Class I misdemeanor is vacated and the cause is remanded to the district court to remand to the county court for imposition of an appropriate sentence for a Class II misdemeanor pursuant to § 28-518(4). See *State v. Dixon*, 306 Neb. 853, 947 N.W.2d 563 (2020) (even if evidence in record in theft case failed to support specific value found by jury, such insufficiency would result only in reduction in offense grade and

remand for resentencing, not reversal of conviction for theft by receiving stolen property).

## CONCLUSION

For the above-stated reasons, we affirm Payne's conviction for theft by unlawful taking but vacate the sentence and remand to the district court to remand to the county court with directions to impose an appropriate sentence for a Class II misdemeanor.

Affirmed in part, and in part vacated
and remanded for resentencing.