2007 UT App 264

**STATE of Utah, Plaintiff and Appellee,**

v.

**Sydney Arthur WENGREEN, Defendant and Appellant.**

No. 20051018–CA.

Court of Appeals of Utah.

Aug. 2, 2007.

Mark McBride, Woodland Hills, California, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Karen A. Klucznik, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BENCH, P.J., GREENWOOD, Associate P.J., and ORME, J.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶ 1 In October 2002, a jury convicted Defendant Sydney Arthur Wengreen of one count of aggravated sexual abuse of a child. *See* Utah Code Ann. § 76–5–404.1(3) (1999).[1] Defendant appeals, arguing that the trial court erred in denying (1) Defendant's motion for arrest of judgment or new trial based on prosecutorial misconduct; (2) his motion to compel compliance with a subpoena duces tecum seeking medical records of K.S., the victim; and (3) Defendant's motion for new trial based on newly discovered evidence. We affirm.

## BACKGROUND [2]

¶ 2 At the time Defendant was accused of abusing K.S., she was a thirteen-year-old girl and Defendant was approximately forty years old. Prior to the abuse, K.S. spent a lot of time with Defendant and his family, working on their farm and babysitting the children. During one evening in 2001, K.S. was babysitting at Defendant's home. When Defendant and his wife, Mrs. Wengreen, returned home, the children were asleep and Defendant, K.S., and Mrs. Wengreen watched television together until Mrs. Wengreen went into her bedroom. Shortly thereafter, Defendant scooted close to K.S. and "started rubbing [her] leg and kissing [her] neck." Defendant then "picked [K.S.] up and unzipped [her] pants and he laid [K.S.] on him." Defendant also touched K.S.'s butt and told her she "was pretty and stuff" and that "he loved" her. K.S. was "scared" and "shocked." Defendant then drove K.S. home, and along the way he told K.S. that if she told anyone about the incident, they would both "get in trouble." Defendant also said that he would "come after" K.S. and her family.

¶ 3 On two occasions, K.S. wrote about the babysitting incident[3] in her journal. She also described the abuse to her sister, her parents, and her church bishop.

¶ 4 In February 2002, the police and a representative from the Division of Child and Family Services (DCFS) interviewed K.S. about the abuse allegations, and K.S. described what happened. K.S. was also interviewed a week later, where she essentially reiterated the allegations from the first interview. As part of the investigation, the police had K.S. place a "pretext" telephone call to Defendant. During the telephone conversation, K.S. asked Defendant, "Why did you do it and stuff?" Defendant responded, "That I don't know, being stupid I guess. . . . I like you a lot and I was showing a way of being nice to you I guess . . . which was wrong." Defendant also repeatedly apologized for his conduct, stating:

> [Def:] I apologize, I shouldn't have told you
> I liked ya' or anything . . . and I

---

1. Although Defendant was convicted in 2002, resolution of this appeal was delayed because Defendant's case took a circuitous route through the appellate courts. After filing various post-trial motions, Defendant filed his first notice of appeal in 2004. Defendant's notice, however, was filed prior to the trial court's entry of a final judgment, and this court dismissed Defendant's appeal for lack of jurisdiction. *See State v. Wengreen*, 2005 UT App 249, para. 7 (mem.) (per curiam). In October 2005, Defendant filed a motion to reinstate his right to appeal in accordance with *Manning v. State*, 2005 UT 61, ¶¶ 26–33, 122 P.3d 628. The State stipulated to Defendant's motion, and the trial court granted it. In November 2005, Defendant filed a timely notice of appeal and a few months later, filed his brief. In April 2005, this court granted the State's motion to strike Defendant's brief, and Defendant filed a corrected brief in August 2006. Briefing concluded in March 2007.

2. We recite the facts in the light most favorable to the jury's verdict. *See State v. Casey*, 2003 UT 33, ¶ 2, 82 P.3d 1106.

3. Defendant was also charged with two other counts of aggravated sexual abuse of a child involving other alleged incidents with K.S. However, he was only convicted of the event that took place while K.S. was babysitting.

shouldn't have taken anything when you sat next to me either ... so, so, I apologize and I wish I could take things back, and I've been trying to come to terms with what happened too so....

[K.S.:] I know, and you also touched my bootie and stuff.

[Def:] I touched your what?

[K.S.:] My bum.... You were rubbing it and [long pause] it makes me feel disgusting.

[Def:] Well, I'm sorry, I apologize for it.

K.S. also asked Defendant if it was okay if she talked to her bishop about the incident so that she could "be worthy to get [her] patriarchal blessing." Defendant responded,

Well, what if it throws me in jail ... I don't know what your dad will do.... Not every sin you do has to be confronted with people, I mean, or go to the bishop or whatever. A lot of your sins can be taken care of with you and the lord, right?

He then told K.S., "[T]ry it. I have. I went to him. I fasted and prayed about it and I feel like I have been forgiven of it ..." At the close of the conversation, Defendant stated, "I'm sorry for what I did. I'm supposed to know better." K.S. then asked Defendant, "Why did you touch me?" He responded, "I gave you a hug to tell you that I liked you." She asked, "Why my butt?" And Defendant stated, "Um, you got a cute butt.... I'm sorry."

¶ 5 At trial, the State introduced a recording of the pretext telephone call. At the beginning of the tape, there was a brief exchange between K.S. and Mrs. Wengreen that the trial court had ruled was inadmissible hearsay. When the tape was played for the jury at trial, the prosecutor fast forwarded through the exchange between K.S. and Mrs. Wengreen. But when the prosecutor submitted the tape to the jury, he failed to redact that portion of the recording, and the entire tape was taken into the jury room.

¶ 6 On October 4, 2002, a jury found Defendant guilty of one count of aggravated sexual abuse of a child. On October 11, Defendant filed a Motion For New Trial or for Arrest of Judgment Based on Prosecutorial Misconduct. Defendant's motion was based on the inadmissible portion of the tape being submitted to the jury. The trial court denied the motion based on the fact that two jurors submitted affidavits stating that the jurors did not listen to that section of the tape, and Defendant failed to provide any evidence to the contrary.

¶ 7 In February 2003, Defendant's presentence investigation report (PSI) was completed. The PSI revealed that three days after the verdict was announced, K.S. attempted suicide and was subsequently treated at Logan Regional Hospital Behavioral Health Unit, McKay–Dee Hospital, and Utah State Hospital. In preparation for the PSI, the investigator had interviewed K.S. while she was being treated at Logan Regional Hospital. During the interview, K.S. described the babysitting abuse as being more egregious than she had at previous interviews and at trial. Several health care professionals also provided letters, included in the PSI, regarding K.S.'s emotional stability. One letter, which was also submitted to the State before trial, stated that K.S.'s "emotional stability is currently in serious question due to the trauma of the abuse and ongoing harassment and intimidation by the accused." Another letter stated that K.S. was "experiencing severe and chronic Post Traumatic Stress Disorder [ (PTSD) ], Major Depressive Disorder and Anorexia Nervosa." The PSI also revealed that K.S. had previously been sexually assaulted by other individuals and that there were allegations of prior physical abuse by her brother that had not yet been investigated.

¶ 8 Based on the information revealed in the PSI, Defendant filed a motion to compel K.S.'s medical records from two of the hospitals that had treated K.S. after trial for in camera review. Defendant argued that the records would reveal that K.S. was unstable at trial and was, therefore, unable to testify truthfully. The trial court denied Defendant's motion.[4] Defendant also filed a motion for new trial based on newly discovered evidence. Defendant argued that the alleged

---

4. Defendant filed a Petition for Permission to File an Interlocutory Appeal regarding the trial court's denial of his motion to compel. The Utah Supreme Court denied Defendant's petition.

new evidence—allegations of other abuse, K.S.'s changed account of Defendant's abuse, and K.S.'s fragile mental state—indicated that K.S. was unable to testify truthfully at Defendant's trial. The trial court denied Defendant's motion.

¶ 9 On appeal, Defendant challenges all three of the trial court's rulings: denial of the motion for new trial or arrest of judgment based on prosecutorial misconduct, denial of the motion to compel, and denial of the motion for new trial based on newly discovered evidence.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 10 Defendant first argues that the trial court erred by failing to grant his motion for new trial or arrest of judgment based on prosecutorial misconduct. We review the denial of Defendant's motion for abuse of discretion. *See State v. Tilt,* 2004 UT App 395, ¶ 11, 101 P.3d 838.

■ ¶ 11 Defendant next argues that the trial court erred by denying his motion to compel the victim's post-trial medical records. A trial court's ruling regarding the existence of a privilege, or an exception thereto, is a question of law, which we review for correctness. *See State v. Blake,* 2002 UT 113, ¶ 6, 63 P.3d 56.

■ ¶ 12 Finally, Defendant asserts that the trial court erred in denying Defendant's motion for new trial based on newly discovered evidence. We review the denial of a motion for new trial based on newly discovered evidence for abuse of discretion. *See State v. Montoya,* 2004 UT 5, ¶ 10, 84 P.3d 1183. "At the same time, however, we review the legal standards applied by the trial court in denying the motion for correctness." *State v. Martin,* 2002 UT 34, ¶ 45, 44 P.3d 805.

## ANALYSIS

### I. Prosecutorial Misconduct

■ ¶ 13 Defendant argues that the trial court abused its discretion in failing to grant his motion for new trial based on prosecutorial misconduct because the prosecutor submitted the tape of the pretext call to the jury without redacting the conversation between K.S. and Mrs. Wengreen. "Prosecutorial misconduct occurs when the prosecutor's comments call the jurors' attention to matters not proper for their consideration and when the comments have a reasonable likelihood of prejudicing the jury by significantly influencing its verdict." *State v. Reed,* 2000 UT 68, ¶ 18, 8 P.3d 1025. If, upon review, we conclude that absent the misconduct, "there is a reasonable likelihood the jury would have reached a more favorable result . . ., we will reverse." *Id.*

¶ 14 In this instance, the trial court found, based on affidavits, that "[t]he jurors did not listen to the inadmissible portion of the tape," and Defendant "failed to present any evidence or fact that the jury . . . w[as] influenced by the inadmissible portion" of the tape. Instead of presenting evidence to contradict the trial court's findings, Defendant asserts that the trial court erred because "the mere fact that the jury had to sit and wait as they fast forwarded through Mrs. Wengreen's statements was tantamount to a comment on her silence at trial" and "undoubtedly caused the jury to pause and question why Mrs. Wengreen never testified at trial." This argument is based entirely on speculation, therefore, we decline to further address it. *See State v. Gonzales,* 2002 UT App 256, ¶ 20, 56 P.3d 969 (refusing to find error based on a challenged jury instruction because the defendant wanted the court "to assume prejudice, [when] all [the defendant] propose[d was] a speculative and isolated hypothetical interpretation of the [error]").

### II. Motion to Compel K.S.'s Medical Records

■ ¶ 15 Defendant asserts that the trial court erred by denying his motion to compel K.S.'s medical records because Defendant's request met the "reasonable certainty" test established in *State v. Blake,* 2002 UT 113, ¶ 19, 63 P.3d 56. Rule 506 of the Utah Rules of Evidence protects, as privileged, any information communicated in confidence for the purpose of treating or diagnosing a patient. *See* Utah R. Evid. 506(b). The privilege, however, does not exist if the condition of the patient "is an element of any claim or de-

fense ... in any proceedings in which any party relies upon the condition as an element of the claim or defense."[5] *Id.* at 506(d)(1). Analyzing the exception to the rule 506 privilege, the Utah Supreme Court explained that it is "not enough to show that the ... records exist," but Defendant "must [also] show, *with reasonable certainty,* that the sought-after records actually contain 'exculpatory evidence ... which would be favorable to [his] defense.'" *Blake,* 2002 UT 113 at ¶ 19, 63 P.3d 56 (emphasis added) (omission in original) (quoting *State v. Cardall,* 1999 UT 51, ¶ 30, 982 P.2d 79). Although the reasonable certainty standard is somewhat elusive, the Utah Supreme Court explained that in the context of sexual abuse cases, it "lies on the more stringent side of 'more likely than not.'" *Id.* at ¶ 20. Reflecting on the policy implications behind the reasonable certainty test, the court stated that it

> necessarily requir[es] some type of extrinsic indication that the evidence within the records exists and will, in fact, be exculpatory. The difficulty in meeting this test is deliberate and prudent in light of the sensitivity of these types of records and the worsening of under-reporting problems in the absence of a strong privilege.

*Id.* at ¶ 19.

¶ 16 To further illustrate its point, the Utah Supreme Court listed examples of the types of requests that may or may not warrant an in camera review of protected medical records:

> [W]hen the request is a general one, such as [a] request ... for any impeachment material that might happen to be found in the privileged records, a court ought not to grant in camera review. At a minimum, specific facts must be alleged. These might include references to records of only certain counseling sessions, which are al-

leged to be relevant, independent allegations made by others that a victim has recanted, or extrinsic evidence of some disorder that might lead to uncertainty regarding a victim's trustworthiness.

*Id.* at ¶ 22. In this case, Defendant does not meet the reasonable certainty test because there is no proof the records Defendant seeks exist, and even if they did, Defendant does not demonstrate, with reasonable certainty, that the records would be exculpatory.

¶ 17 For example, instead of making a specific request for certain records, Defendant makes a general claim that the information contained in the medical reports *may* lead to information establishing that K.S. was suffering from mental or emotional deficiencies during trial. Other than the records indicating that K.S. may have suffered a breakdown after trial, Defendant fails to point to any extrinsic evidence indicating there are medical records that would document that K.S. was suffering from any type of disorder or mental illness during trial.[6] In fact, when the trial court asked Defendant if he had "anything specific [he could] point to to say in the past [K.S.] had a mental health problem," defense counsel responded, "You know I don't because I can't." Defendant provides no new argument on appeal.

¶ 18 Moreover, Defendant cannot establish, to a reasonable degree of certainty, that the alleged evidence he seeks would be exculpatory. Defendant claims the information in the PSI "indicates that what [K.S.] testified to at trial was perhaps not what happened." More specifically, Defendant asserts that K.S. may not have testified truthfully at trial because (1) K.S. may have been experiencing dissociation and amnesia, side effects of PTSD; (2) she referenced other possible episodes of abuse; and (3) a health care provider explained that K.S. suffered from PTSD.

---

5. The State argues that Defendant has not proven that K.S.'s mental state is an element of his defense because Defendant is seeking evidence of K.S.'s mental state solely for impeachment purposes. "However, we need not reach the question of whether an element of a claim or defense is implicated since [Defendant] has not shown with reasonable certainty that the records he seeks contain exculpatory evidence." *State v. Blake,* 2002 UT 113, ¶ 19 n. 2, 63 P.3d 56.

6. Defendant did receive a copy of a letter from Heather Nelson, a social worker who had worked with K.S., on the first day of trial indicating that K.S.'s emotional stability was currently in "serious question," yet he does not cite to that evidence in this section of his brief, nor did he mention it to the trial court when it asked Defendant if he had any evidence indicating a history of mental illness.

However, even if K.S. were suffering from PTSD at trial, although no evidence so indicates, there is no reasonably certain exculpatory value in the medical records because K.S. recounted Defendant's abuse consistently, several times before and at trial. At best, Defendant is optimistic that the evidence he seeks would be favorable, but he fails to establish that fact in accordance with the reasonable certainty test. We therefore conclude that the trial court did not err in denying Defendant's motion to compel K.S.'s medical records. Furthermore, we agree with the trial court that in keeping with the strong policy implications behind the high standard enunciated in *Blake*, Defendant's unsubstantiated request would only open the door to further victimization of K.S.

### III. Newly Discovered Evidence

■ ¶ 19 Defendant argues that the trial court abused its discretion in denying his motion for new trial based on newly discovered evidence because the alleged evidence at issue came to light after trial, and because it would make a different result probable upon retrial. "We afford trial judges a wide range of discretion in determining whether newly discovered evidence warrants the grant of a new trial." *State v. Pinder*, 2005 UT 15, ¶ 66, 114 P.3d 551 (quotations omitted). This is partly because of "the superior position the trial judge holds when assessing the credibility of the new evidence, an essential component of the determination of whether the evidence would make a different result on retrial probable." *Id.* "At the same time, however, we review the legal standards applied by the trial court in denying the motion [for new trial] for correctness." *State v. Martin*, 2002 UT 34, ¶ 45, 44 P.3d 805. The applicable legal standard, enunciated in *State v. James*, 819 P.2d 781 (Utah 1991), establishes the following test:

> [T]o constitute grounds for a new trial: "(1) [the evidence] must be such as could not with reasonable diligence have been discovered and produced at the trial; (2) it must not be merely cumulative; [and] (3) it

must be such as to render a different result probable on the retrial of the case."

*State v. Montoya*, 2004 UT 5, ¶ 11, 84 P.3d 1183 (quoting *James*, 819 P.2d at 793).

¶ 20 Examining the same evidence Defendant relies on in his appeal, the trial court concluded that it "does not rise to the level of newly discovered evidence sufficient to grant a new trial ... [and] even if the evidence is sufficient newly discovered evidence, it would not probably change the outcome of the jury verdict." We agree.

¶ 21 Defendant characterizes the following items as "new evidence:" (1) K.S.'s statements to investigators portraying more serious acts of abuse than those she had previously described; (2) information indicating that at the time of, and immediately following, Defendant's trial, K.S. was emotionally unstable; and (3) evidence indicating that a family member may have previously abused K.S. and that two other individuals sexually assaulted her in April 2002. Further, Defendant asserts that this new evidence indicates that K.S.'s testimony at trial was "not reliable, possibly incompetent, and ... certainly establishes that K.S.'s ability to accurately report was compromised." Although Defendant may be able to at least partially satisfy the first two prongs of the *James* test, he does not satisfy the third prong because the evidence would not make a different result probable upon retrial.

¶ 22 The first item of evidence—more extensive allegations of abuse—was not discoverable prior to trial because K.S. did not elaborate on the abuse until an interview after trial. The allegations of additional abuse were also not discoverable, with due diligence, prior to trial because even the State was unaware of the allegations.[7] The same, however, is probably not true regarding evidence of K.S.'s mental state. Although K.S.'s condition apparently worsened after trial, Defendant put K.S.'s mental state at issue during trial, and could therefore have attempted to discover at least some

---

**7.** Defendant asserts that the State knew of these facts, yet failed to disclose them, but he does not cite any evidence in the record to support his assertion. In contrast, at Defendant's hearing on the motion for new trial, the State asserted that it was not aware of the abuse allegations until after trial, and that as soon as it became of aware of them, disclosed the information to Defendant.

additional evidence, including, possibly, K.S.'s medical records, prior to trial. During opening arguments, Defendant asserted that K.S.'s diary entries would reveal "some emotional problems ... maybe I'll commit suicide, things like that, going through her." During cross-examination, K.S. read diary entries revealing that she had felt like killing herself but, instead, cut herself "with knives or something to get rid of the pain." K.S. also stayed up all night crying, and felt like "blowing [her] head off or something like that."

¶ 23 Also at trial, the prosecutor informed the court that it intended to call Heather Nelson, a social worker who had been counseling K.S., and who was worried that K.S. was suicidal. Nelson had written a letter expressing those same concerns, which the prosecutor had provided to Defendant on the first day of trial. Defendant objected to Nelson testifying, arguing that if she did in fact testify, Defendant was "entitled to look at her entire file." Other than that objection, Defendant did not pursue any further investigation into K.S.'s medical records.[8] Consequently, we conclude that Defendant could have discovered at least some of K.S.'s medical records, with due diligence, prior to trial.

¶ 24 Regarding the second prong of the *James* test, there is no indication that the evidence Defendant seeks would have been cumulative. Evidence is cumulative if it is "of the same character as existing evidence and ... supports a fact established by the existing evidence (esp[ecially] that which does not need further support)." *Black's Law Dictionary* 458 (abr. 7th ed.2000). There was no evidence presented at Defendant's trial regarding a medical diagnosis for K.S., more extensive accounts of abuse, or the allegations and investigation of other acts of abuse. Therefore, the evidence would not be cumulative.

¶ 25 Even if Defendant at least partially satisfies the first two prongs of the *James*

test, Defendant cannot demonstrate that a different result is likely upon retrial. Defendant argues that evidence documenting K.S.'s post-trial emotional state and her more elaborate allegations of abuse would produce a different result on retrial because K.S.'s mental state "went to the very heart of the case concerning who to believe about allegations of abuse." Defendant relies on *State v. Martin*, 2002 UT 34, 44 P.3d 805, as support for this proposition.

¶ 26 In *Martin*, the Utah Supreme Court reversed a defendant's conviction because the trial court incorrectly held that newly discovered evidence regarding the victim's prior conduct in a similar encounter was inadmissible and would not have made a more favorable result likely upon retrial. *See id.* at ¶ 51. The difference, however, between this case and *Martin*, is that in *Martin*, "[t]he central issue ... was the credibility of the parties and whom to believe about the circumstances of th[e] sexual contact." *Id.* at ¶ 48 (quotations omitted). Because there were no witnesses or physical evidence documenting the abuse allegations involving two adults, the only issue for the jury to consider was consent. *See id.* Therefore, the supreme court ruled that the trial court erred by rejecting the defendant's motion for a new trial based on evidence, discovered after trial, that the victim had consented to a similar encounter. *See id.* at ¶¶ 33, 48–49.

¶ 27 In contrast, in this case, there was evidence beyond K.S.'s trial testimony that supported Defendant's conviction. For example, the jury heard incriminating evidence from Defendant himself via the pretext telephone call; testimony from K.S., which included her diary entries; testimony from K.S.'s family members; stipulated testimony from K.S.'s bishop; and testimony from the DCFS social worker who investigated the abuse. The fact that K.S. changed, or elaborated on, the allegations and may have suffered from a breakdown after trial does not,

---

8. Defendant also argues that the State withheld evidence regarding K.S.'s mental state because Nelson "could have revealed the emotional and mental health of the victim to the State." In other words, Defendant asserts that, had the State interviewed Nelson, it "could have become aware" of K.S.'s mental state and, therefore, would have had a "duty to disclose that information." This argument is unavailing because the State provided Defendant with Nelson's September 24, 2002 letter shortly after receiving it.

without more, indicate that K.S. was unable to testify truthfully at trial.

¶ 28 Furthermore, the trial court concluded that the more extensive account of Defendant's abuse contained in the PSI report was hearsay, and that it paled in comparison to the reliability of the victim's prior consistent testimony. The trial court also explained that K.S.'s changed testimony was likely the result of the traumatic experience of testifying and the fact that during trial, Defendant's wife had directed an outburst at K.S. Considering "the superior position the trial judge holds when assessing the credibility of the new evidence," *State v. Pinder*, 2005 UT 15, ¶ 66, 114 P.3d 551, the trial court did not abuse its discretion in concluding that evidence regarding K.S.'s post-trial account of the abuse would not make a more favorable result for Defendant probable upon retrial.

¶ 29 Defendant's arguments regarding the additional allegations of abuse are also unavailing. A police report prepared some time before trial revealed that K.S. was riding in a car with two boys when she fell asleep and the boys touched her breasts. K.S. reported the event, and the boys admitted it. There is no indication this evidence would be admissible at trial, and even if it were, it is unlikely that it would serve to exculpate Defendant or contradict K.S.'s account of Defendant's abuse. Moreover, the alleged physical abuse by K.S.'s brother derived from a statement K.S. made to a DCFS worker after trial. After interviewing K.S., DCFS told the investigator, briefly and generally, about the abuse allegation. At the time of the hearing on the motion for new trial, the allegations had not been investigated. On appeal, Defendant does not present any evidence indicating the abuse actually occurred. Because we find that Defendant fails to establish that the evidence he points to would make a different result probable upon retrial, we affirm the trial court's decision to deny Defendant's motion for new trial based on newly discovered evidence.

## CONCLUSION

¶ 30 We affirm Defendant's conviction because Defendant fails to establish that he was prejudiced by the prosecutor's alleged misconduct; he fails to demonstrate, with reasonable certainty, that the medical records he seeks contained exculpatory evidence; and he does not establish that the alleged new evidence would have produced a more favorable result upon retrial.

¶ 31 WE CONCUR: RUSSELL W. BENCH, Presiding Judge, and GREGORY K. ORME, Judge.