2009 UT App 2

**STATE of Utah, Plaintiff and Appellee,**

v.

**Edward Allen BUCK, Defendant and Appellant.**

**No. 20070534–CA.**

Court of Appeals of Utah.

Jan. 2, 2009.

---

Lori J. Seppi and Stephen W. Howard, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Kenneth A. Bronston, Asst Atty. Gen., Salt Lake City, for Appellee.

Before Judges GREENWOOD, DAVIS, and McHUGH.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Defendant Edward Allen Buck appeals his conviction for one count of theft, a class A misdemeanor, in violation of Utah Code section 76-6-404. *See* Utah Code Ann. § 76-6-404 (2003); *id.* § 76-6-412(c). Specifically, Defendant argues that there was insufficient evidence to support his conviction and that the trial court erred in denying his motion to arrest judgment based on allegations of prosecutorial misconduct. We affirm.

## BACKGROUND [1]

¶ 2 Defendant and Alan Myers met in California. At that time, Defendant and Myers

---

1. When reviewing a challenge to a jury convic-    tion we "recite the evidence and all reasonable

discussed a bitless bridle for horses that Defendant had designed. Myers expressed his interest in the bridle and suggested that Defendant come see him next time Defendant was passing through Utah—Myers's home state. Shortly thereafter, Defendant and his girlfriend arrived at Myers's house with "all of [Defendant's] possessions ... in the car" and with no idea how they were going to get back home. Myers "offered for [Defendant] and [his girlfriend] to stay in [Myers's] basement until [he could] figure[ ] out how to maybe help them out to get back on their feet."

¶ 3 After several months during which no job opportunities arose for Defendant, Myers suggested that he and Defendant start up a website to sell Defendant's bridles. In furtherance of this enterprise, the two formed a partnership called Supreme Cavalry.[2] It "was a 50/50 partnership" with each party's role clearly defined. Myers was responsible for building the website and contributing all necessary computer and business expertise, along with the account credit, business relations, and internet contacts. Defendant's role was to provide the designs for and to market and sell the bridle. Myers contributed all the capital necessary to maintain the website and to pay for the related services from his "personal business accounts."

¶ 4 The only alleged asset of the partnership was the computer which Defendant was ultimately convicted of stealing. This was one of the primary areas of factual contention between Myers's and Defendant's recitations of events. Myers claimed that he had built the computer[3] for his personal business and that, although he allowed Defendant to use it for quasi-partnership business, it was not a partnership asset. Defendant, on the other hand, argued that he thought the computer was built for his use in furtherance of the partnership. Defendant further based this conclusion on the fact that the computer did not appear to be networked to Myers's other five home computers and that only

Defendant's files were found on the computer.

¶ 5 After several months with no bridles sold, Myers told Defendant to "get a job to help ... support [him]self." Defendant subsequently obtained a job as a live-in caretaker and moved out of Myers's basement. Despite this, the partnership remained in force. Defendant continued to come by Myers's house and work on the computer "about two times a week around 8:00 in the morning until 1:00 in the afternoon, primarily to work on his lawsuit." The lawsuit in question was an unresolved issue between Defendant and his former partner regarding the bridle. Although the parties disagreed about the business necessity of resolving the lawsuit to the partnership, Defendant was clearly given permission to work on the lawsuit using the computer.

¶ 6 In August 2005, Myers and his family went on a week-long vacation and Myers left Defendant in charge of feeding his pets. When Myers returned home he found the computer missing and, in its place, an explanatory letter from Defendant. The letter expressed Defendant's apparent unhappiness with Myers's commitment to the partnership and purported to dissolve the partnership. In addition, the letter stated that Defendant had taken the computer because "it has only [Defendant's] stuff on it and [he] need[s] it." The letter continued, stating that Defendant "will pay [Myers] for the computer at fair market value when [he] ha[s] the appropriate funds." The letter was silent as to the amount to be paid for the computer and the time frame for repayment, as well as Defendant's future contact information. The letter did, however, have a Las Vegas, Nevada return address.

¶ 7 Unable to contact Defendant in Las Vegas, Myers drove by the home where Defendant worked as a live-in caretaker and spotted Defendant's car there. Following

---

inferences drawn therefrom in a manner most favorable to the jury verdict." *State v. Lyman*, 966 P.2d 278, 279 n. 1 (Utah Ct.App.1998).

**2.** The parties disagree whether the partnership was created in writing or orally.

**3.** While not clear from the record, it appears Myers was sufficiently familiar with computer technology to enable him to assemble separate computer components into a functioning computer.

the advice of his insurance company, Myers called the police to report the missing computer and told them of Defendant's whereabouts. When the police officers arrived to question Defendant, he did not initially appear to understand why they were there. Defendant acknowledged that he took the computer from Myers's residence without consulting with Myers "and that he did not have a receipt, contract, or bill of sale for the computer." Despite expressing his concern about being able "to immediately retrieve some information off the computer," Defendant complied with the officers' requests to turn the computer over to them.

¶ 8 Consequently, Defendant was charged with one count of theft, a class A misdemeanor, *see* Utah Code Ann. § 76–6–404 (2003); *id.* § 76–6–412(c). At the subsequent jury trial Myers and Defendant each testified as to their recollection of the events from inception of the partnership until its dissolution. Although Defendant was not charged with theft of computer software or a computer operating system, both Defendant and Myers testified regarding their understandings of the operating system and software installed on the computer. On rebuttal after Defendant's closing argument, the prosecutor briefly commented on Myers's testimony related to the software and operating system. Following this, the jury retired to deliberate and ultimately found Defendant guilty as charged.[4] Defendant now appeals.

## ISSUES AND STANDARDS OF REVIEW [5]

¶ 9 Defendant claims that the evidence was insufficient to support his conviction for theft. We will reverse a jury verdict for insufficient evidence only when the evidence, viewed in a light most favorable to the verdict, " 'is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.' " *State v. Lyman,* 966 P.2d 278, 281 (Utah Ct.App.1998) (quoting *State v. Hamilton,* 827 P.2d 232, 236 (Utah 1992)).

¶ 10 Defendant also argues that the trial court erred by denying his motion to arrest judgment based on allegations of prosecutorial misconduct stemming from comments made by the prosecutor on rebuttal to Defendant's closing argument. We review the denial of such a motion for abuse of discretion. *See State v. Wengreen,* 2007 UT App 264, ¶ 10, 167 P.3d 516.

## ANALYSIS

### I. Sufficiency of the Evidence

¶ 11 Defendant challenges the sufficiency of the evidence supporting his conviction for theft, arguing that the evidence was entirely circumstantial and did not preclude his reasonable alternative hypothesis. Defendant further argues that because the evidence could reasonably support his alternative hypothesis, the State necessarily failed to disprove his affirmative defense that he honestly believed either that he had the right to the computer or that Myers would not have objected to Defendant's taking it if he had been present.

¶ 12 " 'It is fundamental that the State carries the burden of proving beyond a reasonable doubt each element of an offense, including the absence of an affirmative defense once the defense is put into issue.' " *State v. Low,* 2008 UT 58, ¶ 45, 192 P.3d 867 (quoting *State v. Hill,* 727 P.2d 221, 222 (Utah 1986)). It is also clear that circumstantial evidence alone can be sufficient to satisfy this burden. *See Lyman,* 966 P.2d at 281 ("Circumstantial evidence need not be regarded as inferior evidence if it is of such quality and quantity as to justify a jury in determining guilt beyond a reasonable doubt . . . ." (internal quotation marks omitted)). However, when a jury conviction is grounded

---

4. After three hours of deliberation, the trial court gave the jury "one additional instruction," urging the jury "to decide this case if [they] can without yielding [their] conscience convictions." After another forty minutes of deliberation, the jury was called back into the courtroom to see if they thought it was possible to come to a deci-

sion. The jury stated that they thought they could make a decision within another half hour. Forty minutes later they reached a decision.

5. Defendant's appellate brief argued these issues in reverse order.

exclusively in circumstantial evidence, we must look closely at the record to decide

> "(1) whether there is any evidence that supports each and every element of the crime charged, and (2) whether the inferences that can be drawn from that evidence have a basis in logic and reasonable human experience sufficient to prove each legal element of the offense beyond a reasonable doubt. A guilty verdict is not legally valid if it is based solely on inferences that give rise to only remote or speculative possibilities of guilt."

*Id.* (quoting *State v. Brown*, 948 P.2d 337, 344 (Utah 1997)).

¶ 13 Under the Utah Code, "[a] person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof." Utah Code Ann. § 76–6–404 (2003). In this case, it is uncontested that Defendant had "obtain[ed] or exercise[d] unauthorized control over the [computer]." The sole contested issue at trial therefore was whether Defendant had the necessary intent to be convicted of the crime charged. Defendant argued that he could not have had the requisite intent because he did not intend to deprive Defendant of the computer, but rather, he "took [it] with an honest belief that he had an ownership interest in it or that Myers, if present, would not have objected to his taking it." In support, Defendant testified that he believed the computer was built especially for him to work on his lawsuit, that resolution of the lawsuit was necessary to the success of the partnership, and that he had never seen anyone else use the computer.[6] Defendant further testified that he gave Myers a ten percent stake in the outcome of the lawsuit in exchange for "provid[ing Defendant] with a computer." To prove that

Defendant possessed the requisite intent to deprive and to disprove Defendant's "honest belief" affirmative defense, the State presented testimonial evidence to the contrary. Myers testified that he owned the computer and that it was never transferred to nor owned by the partnership. Myers further testified that the computer was not built specifically for Defendant and that not just Defendant, but Myers's entire family, had used the computer "at one time or another." Finally, Myers testified that although he allowed Defendant to use the computer to work on the lawsuit, he did not believe that the lawsuit was necessary to the partnership and rejected the idea that there was an agreement to split the potential profits from resolution of the lawsuit.

¶ 14 Undoubtedly, Defendant's counsel presented the jury with a plausible defense theory. While it is, in many instances, defense counsel's job to craft a reasonable alternative hypothesis supportive of the defendant's innocence, presentation of such a hypothesis alone is not enough. *See State v. Lyman*, 966 P.2d 278, 281 (Utah Ct.App. 1998) ("'[T]he existence of one or more alternate reasonable hypotheses does not necessarily prevent the jury from concluding that defendant is guilty beyond a reasonable doubt.'" (quoting *State v. Blubaugh*, 904 P.2d 688, 695 (Utah Ct.App.1995))). This is so because it is the exclusive province of the jury to weigh the competing theories of the case, in light of the evidence presented and the reasonable inferences drawn therefrom, and to conclude which one they believe.[7] Therefore, it is perfectly appropriate for a jury to reject a reasonable alternative hypothesis presented by the defense, and to convict the defendant. *See id.* at 282 (noting that after presentation of the competing

---

**6.** In addition, the parties stipulated to the fact that the computer "was examined by a governmental agency which specializes in the forensic examination of computers .... [and that t]he forensic examination of the data on the hard drive did not reveal any data or files that appeared to belong to anyone other than ... [D]efendant."

**7.** Defendant similarly argues that the evidence must have been insufficient because the jury deliberated for five hours, indicating "the great difficulty the jury had reaching a verdict." De-

fendant then reargues the evidence supporting his theory of the case and asks us to conclude that the evidence was insufficient simply because his position is still arguable. However, we decline to do so because it is the job of the jury, not this court, to examine the competing theories presented at trial, weigh the evidence supporting those theories, determine the credibility of the witnesses, and choose which theory to believe. *See State v. Lyman*, 966 P.2d 278, 282 (Utah Ct.App.1998).

theories of the case, "[i]t is [then] within the province of the jury to judge the credibility of the testimony, assign weight to the evidence, and reject these alternate reasonable hypotheses" (second alteration in original) (internal quotation marks omitted)). Where the jury has done just that, we will reverse its verdict only if we determine that the evidence and inferences did not preclude the reasonable alternative hypothesis presented by the defense. Or, put another way, "we will reverse a conviction if the evidence is so insubstantial or inconclusive that reasonable minds must necessarily entertain a reasonable doubt as to a defendant's guilt." *State v. Hill*, 727 P.2d 221, 222 (Utah 1986). We do not think the evidence in this case "is so insubstantial or inconclusive," and we therefore reject Defendant's assertion of insufficient evidence.[8]

## II. Denial of Defendant's Motion to Arrest Judgment

¶ 15 Defendant argues that the trial court abused its discretion by denying his motion to arrest judgment, which motion was based on allegations of prosecutorial misconduct arising from the prosecutor's comments made during rebuttal to Defendant's closing argument. "[P]rosecutorial misconduct claims trigger 'a two-step test that must be applied under the circumstances of the particular case.' " *State v. Todd*, 2007 UT App 349, ¶ 15, 173 P.3d 170 (quoting *State v. Troy*, 688 P.2d 483, 486 (Utah 1984)). The first prong of this test requires us to determine whether " 'the prosecutor's comments call[ed] the jurors' attention to matters not proper for their consideration.' " *State v. Wengreen*, 2007 UT App 264, ¶ 13, 167 P.3d 516 (quoting *State v. Reed*, 2000 UT 68, ¶ 18, 8 P.3d 1025). If we conclude that they did, we then must decide whether these improper statements "ha[d] a reasonable likelihood of prejudicing the jury by significantly influencing its verdict.' " *Id.* (quoting *Reed*, 2000 UT 68, ¶ 18, 8 P.3d 1025). Failure on either prong is fatal to the claim. *Cf. id.* (stating the requirements for a successful prosecutorial misconduct claim conjunctively).

¶ 16 During rebuttal of Defendant's closing argument, the prosecutor stated the following:

Who did the operating system [on the computer] belong to? Who owned the licenses of those items[?] [Defendant] can't own the licenses for those items. Those were owned by Mr. Myers. Mr. Myers didn't have the ability to give them up even if (inaudible). They were operating systems on there, Windows Microsoft Word, Acrobat Adobe, again these are things you can't just give away. All the components were (inaudible). So, just 'cause you used [the computer] and needed it, that's not sufficient basis to have an honest belief.

Defendant points out that "[h]e was not charged with theft of software or software licenses" and argues that the prosecutor's comments were inappropriate because they led the jury to believe "that [Defendant] had taken the software and the software licenses for the computer's operating system." Defendant further argues that the prosecutor's comments impermissibly asked the jurors to conclude that "Myers could not give the computer to [Defendant] because he could not 'give away' the software installed on the computer." Moreover, Defendant contends that in making these comments the prosecutor improperly "referenc[ed] matters not in evidence and encourag[ed] the jury to reject [Defendant's] affirmative defense and convict based on these matters."

¶ 17 In denying Defendant's motion to arrest judgment, the trial court noted that it had "listened to the evidence in the case . . . . [and] to closing arguments." The trial court then stated that it "d[id] not find that there was any error made" and that if there was any error, it was harmless. Accordingly, the trial court denied Defendant's motion to arrest judgment and sentenced Defendant according to the jury's verdict.

¶ 18 "Utah law affords trial attorneys considerable latitude in closing arguments. Counsel for both sides have a right to discuss fully from their standpoints the

---

8. Moreover, "where the trial court has considered a defendant's insufficient evidence claim, as is the case here, such action 'lends further weight

to the jury's verdict.' " *Id.* at 281 (quoting *State v. Brown*, 948 P.2d 337, 344 (Utah 1997)).

evidence and the inferences and deductions arising therefrom." *State v. Cummins,* 839 P.2d 848, 852–53 (Utah Ct.App.1992) (citations and internal quotation marks omitted). However, "while prosecutors must have the freedom to present closing argument with logical force, they .... should refrain from argument which would divert the jury from its duty to decide the case on the evidence." *Todd,* 2007 UT App 349, ¶ 18, 173 P.3d 170 (citation and internal quotation marks omitted). Ultimately, we accord deference to the trial court's determination that the prosecutor's comments were not inappropriate " 'because the trial court is in the best position to determine the impact of a statement upon the proceedings.' " *Id.* ¶ 14 (quoting *Cummins,* 839 P.2d at 852).

¶ 19. Admittedly, the comments complained of on appeal include references to computer software and operating systems as well as the licenses for each, and there is no record evidence related to the licenses for these items. However, the prosecutor's references to the computer software and operating systems that were likely installed on the computer are consistent with testimony elicited at trial.[9] Although it is indeed possible that, as Defendant argues, the prosecutor's comments alerted the jury to an improper issue, we are not persuaded that this ultimately affected their decision. When read in context with the remainder of the closing arguments and in light of the evidence presented, it is likely that the prosecutor's comments were simply argument that Defendant's use of the computer alone was not a sufficient basis for him to have honestly believed he had a right to possess it. In fact, just prior to making the comments complained of, the prosecutor argued by analogy that no one would have an honest belief that they had an ownership interest in a library computer simply because they had checked it out and used it for a period of time. Where there are two equally plausible choices, the trial court does not abuse its discretion by accepting one and

rejecting the other. *Cf.* Black's Law Dictionary 479 (7th ed. 1999) (defining "judicial discretion" as "[t]he exercise of judgment by a judge or court based on what is fair under the circumstances and guided by the rules and principles of law"). Thus, we conclude that the trial court did not exceed its allotted discretion in determining that the prosecutor's comments were not erroneous because they did not "call the jurors' attention to matters not proper for their consideration." *See Wengreen,* 2007 UT App 264, ¶ 13, 167 P.3d 516.

¶ 20 Also, even assuming that the comments improperly directed the jurors' attention to matters outside the evidence, we conclude that Defendant has not shown that he was prejudiced thereby. Defendant bases his prejudice argument almost exclusively on the jury's somewhat lengthy deliberation, essentially asking us to presume prejudice where the jury does not quickly return a verdict of guilt. However, we decline to do so. *Cf. State v. King,* 2008 UT 54, ¶¶ 33–34, 190 P.3d 1283 (analyzing the prejudice prong of an ineffective assistance of counsel claim and stating that prejudice may only be presumed in "those circumstances that by their nature make prejudice so likely that case-by-case inquiry into prejudice is not worth the cost" (internal quotation marks omitted)). Moreover, any perceived impropriety stemming from the prosecutor's comments was addressed through the jury instructions. In particular, the jurors were instructed that their decision "must be based *only* on the evidence produced ... in court" and that "[w]hat the lawyers say is not evidence." (Emphasis added.) Therefore, we conclude that even if the prosecutor's reference to the licenses for the computer software and operating systems was outside the evidence, Defendant has not shown that he suffered any prejudice as a result. *See State v. Wengreen,* 2007 UT App 264, ¶ 13, 167 P.3d 516. Accordingly, we determine that the trial court

---

9. The computer software and operating systems referenced by the prosecutor include "Windows Microsoft Word [and] Acrobat Adobe." Operable computers necessarily have at least some operating system and general computer software installed on them, without which they would not properly function. Microsoft Word and Acrobat Adobe are two examples of general operating software. The computer at issue in this case was operable and therefore the prosecutor's reference to the software in question did not elevate Defendant's culpability.

did not abuse its discretion in denying Defendant's motion to arrest judgment. *See id.*

## CONCLUSION

¶ 21 In conclusion, the evidence, although circumstantial and subject to more than one reasonable interpretation, was sufficient to support the jury's verdict of guilt. We further conclude that the trial court did not abuse its discretion in denying Defendant's motion to arrest judgment because the prosecutor's comments, about which Defendant complained, were not improper and Defendant was not prejudiced thereby. As a result, we affirm Defendant's conviction.

¶ 22 I CONCUR: JAMES Z. DAVIS, Judge.

McHUGH, Judge (dissenting in part):

¶ 23 While I concur in Part I of the majority's opinion regarding the sufficiency of the evidence, I respectfully dissent from Part II, which addresses prosecutorial misconduct.

¶ 24 As the majority correctly notes, Utah courts have established a two-part test to determine whether prosecutorial misconduct has occurred. " 'Prosecutorial misconduct occurs when the prosecutor's comments call the jurors' attention to matters not proper for their consideration and when the comments have a reasonable likelihood of prejudicing the jury by significantly influencing its verdict.' " *State v. Wengreen*, 2007 UT App 264, ¶ 13, 167 P.3d 516 (quoting *State v. Reed*, 2000 UT 68, ¶ 18, 8 P.3d 1025). Additionally, the prejudice must be "such that there is a reasonable likelihood the jury would have reached a more favorable result absent the comments." *Reed*, 2000 UT 68, ¶ 18, 8 P.3d 1025. Unlike the majority, however, I would hold that Defendant has satisfied his burden in meeting this two-prong test.

¶ 25 First, the prosecutor called the jurors' attention to matters not proper for their consideration. During closing arguments, the prosecutor relied on information not admitted into evidence and implied both that Defendant had stolen software licenses and that Myers could not have legally consented to Defendant taking the computer because of

that software. *See generally State v. Kohl*, 2000 UT 35, ¶¶ 23–24, 999 P.2d 7 (holding that it is inappropriate to make a claim to the jury during closing arguments when "no evidence ha[s] been presented during trial to support it"). Further, the charge against the Defendant related to theft of the computer, making any reference to theft of software irrelevant. Such tactics have been rejected in Utah. *See State v. Saunders*, 1999 UT 59, ¶ 29, 992 P.2d 951 (finding "[t]he prosecutor far exceeded appropriate prosecutorial zeal and seriously corrupted the integrity of the truth-finding function of the trial" when he referenced conduct of the defendant that did not in any way relate to the charges); *State v. Young*, 853 P.2d 327, 348–49 (Utah 1993) (holding that encouraging the jury to determine its verdict based upon evidence outside the record jeopardizes a defendant's rights). Therefore, I would conclude that the prosecutor's references to the software during closing argument exceeded appropriate prosecutorial zeal.

¶ 26 Second, I would hold that the prosecutor's comments had a reasonable likelihood of prejudicing the jury and significantly influencing the verdict. " '[I]f proof of [the] defendant's guilt is strong, the challenged conduct or remark will not be presumed prejudicial.' " *State v. Ross*, 2007 UT 89, ¶ 54, 174 P.3d 628 (quoting *State v. Troy*, 688 P.2d 483, 486 (Utah 1984)). Such strong proof of guilt is not present here. Although I agree that the evidence survives a highly deferential review of its sufficiency, it was by no means overwhelming. The evidence of criminal intent was particularly thin, creating a close case with a long jury deliberation. Indeed, those deliberations were interrupted twice by further instructions from the trial court encouraging the jury to reach a verdict. Like the majority, I do not view the length of deliberations alone as enough to hold that the trial court exceeded its discretion in denying the Defendant's motion to arrest judgment. Rather, viewing those deliberations in the context of this case, I am convinced that there is a reasonable likelihood that the prosecutor's comments preju-

diced the jury by significantly influencing its verdict. *See Reed,* 2000 UT 68, ¶ 18, 8 P.3d 1025. Consequently, I would reverse on the ground of prosecutorial misconduct.

¶ 27 In sum, I agree that the evidence was sufficient to support the jury's verdict, but I respectfully dissent on both the existence of prosecutorial misconduct and its prejudicial effect.