257 P.3d 1106 (2011)
2011 UT App 228
STATE of Utah, in the interest of C.C.R., a person under eighteen years of age.
State of Utah, Plaintiff and Appellee,
v.
C.C.R., Defendant and Appellant.
No. 20100195-CA.
Court of Appeals of Utah.
July 14, 2011.
*1107 Franklin Reed Bennett, Sandy, for Appellant.
Mark L. Shurtleff and Jeffrey S. Gray, Salt Lake City, for Appellee.
Before Judges McHUGH, THORNE, and CHRISTIANSEN.

MEMORANDUM DECISION
McHUGH, Associate Presiding Judge:
¶ 1 C.C.R., a minor, appeals a juvenile court adjudication finding him delinquent for unlawfully possessing a controlled substance in a drug-free zone, which would be a second degree felony if committed by an adult, see Utah Code Ann. § 58-37-8(2)(a)(i), (4)(a)(i) (Supp.2010). We affirm.
¶ 2 Based on a student's tip, the principal of C.C.R.'s middle school searched C.C.R.'s gym locker and retrieved an oxycodone pill from his pants pocket.[1] C.C.R., who was fifteen years old at the time, prepared a written witness statement immediately after the incident.[2] C.C.R. stated that at the beginning of gym class, another student, B.O., showed C.C.R. a bag containing ten to fifteen pills. C.C.R. reported that upon seeing the pills, he said "I don't do drugs. I know what they do. No way." He claimed that he then left his pants on a bench and that when he came back, B.O. had them. C.C.R. said that he took his pants from B.O., he put them in his locker, and the next thing he knew he was being pulled out of class and questioned about the pill. Both the middle school principal and a teacher whom C.C.R. trusted were present when C.C.R. wrote the statement.
¶ 3 The principal then called the police. The school resource officer responded and informed C.C.R. of his legal rights. C.C.R. agreed to speak with the officer, who interviewed both C.C.R. and B.O. When the police officer told C.C.R. that his version of events was not consistent with those of other witnesses, C.C.R. admitted that he "didn't want to feel like a pussy, so [he] told [B.O.] he would take one [of the pills]." C.C.R. then added a sentence at the bottom of his witness statement, indicating that he "took [the pill] willingly" for the reasons he related to the police officer.[3] At that time, C.C.R. did not suggest to the principal, his teacher, or the police officer that he accepted the pill because of any threats or fear for his safety.
¶ 4 Thereafter, the State filed a delinquency petition, alleging that C.C.R. unlawfully possessed a controlled substance in a drug-free zone, see id. § 58-37-8(2)(a)(i), (4)(a)(i). At the juvenile court adjudication hearing, C.C.R. claimed, for the first time, that he accepted the pill because he received threats that B.O. and others would "beat [him] up" if he did not accept it.[4] C.C.R. further asserted that he intended to throw the pill away. During the hearing, he presented evidence that he was a victim of persistent bullying at school; that he attended at least two remedial classes; that he had attended over 800 Alcoholics Anonymous meetings because of his father's alcoholism; and that he had taken at least three drug tests, all of which were negative. Based on this evidence, C.C.R. argued that under either the affirmative defense of compulsion, see id. § 76-2-302 (2008), or the affirmative defense of "innocent possession" as explained in State v. Miller, 2008 UT 61, ¶ 22, 193 P.3d 92, he should not be adjudicated as delinquent.
*1108 ¶ 5 The State presented several witnesses who contradicted C.C.R.'s version of events. B.O. testified that he approached C.C.R. during gym class and asked C.C.R. if he wanted any of the pills B.O. had stolen from his mother. B.O. further stated that he expected something in exchange for the pill and that C.C.R. "absolutely knew" that the pill he accepted was oxycodone.[5]
¶ 6 In addition, two other students in the same gym class testified about their observations of the incident. The first student (First Student), testified that he was standing within a couple feet of C.C.R. and B.O., that he saw B.O. pull a bag of pills out of his pocket, and that C.C.R. and B.O. "were talking about if they wanted to deal or if [C.C.R.] wanted to buy one." First Student claimed that he indicated to C.C.R. and B.O. that he did not approve of what they were doing. He testified that C.C.R. and B.O. then went together to the locker room, where the deal purportedly occurred. First Student did not personally see any exchange of money or pills but testified that he did not have the impression that B.O. was bullying C.C.R. About a quarter of the way into gym class, First Student left class and reported the incident to the school principal.
¶ 7 Another student (Second Student) also testified. Second Student reported that he saw C.C.R. and B.O. together in gym class and overheard B.O. trying to give C.C.R. a pill. It was Second Student's impression that C.C.R. "didn't really want" to take the pill. However, Second Student also stated that it "wasn't like [C.C.R.] had a gun to his head."
¶ 8 At the conclusion of the adjudication hearing, the juvenile court determined, beyond a reasonable doubt, that C.C.R. had possessed a controlled substance in a drug-free zone and adjudicated him delinquent on that basis. The court found that C.C.R. did not take possession of the pill because of threats but that he took it willingly in an effort to "fit in" and to stop others from calling him "bad names." In making those findings, the juvenile court found it persuasive that on the day of the incident, C.C.R. made no statements to his trusted teacher, the principal, or the police officer indicating that he had been threatened or bullied to accept the pill. The juvenile court found First Student's testimony credible because he had no "axe to grind in this case," and found that C.C.R.'s testimony lacked credibility because his story had changed multiple times. The court further found that C.C.R.'s testimony about his intent to throw the pill away was not credible.
¶ 9 Based on its finding that C.C.R. had not been physically threatened, the trial court concluded that the defense of compulsion did not apply. See generally Utah Code Ann. § 76-2-302(1) (2008) ("A person is not guilty of an offense when he engaged in the proscribed conduct because he was coerced to do so by the use or threatened imminent use of unlawful physical force upon him or a third person. . . ."). The juvenile court also concluded that C.C.R.'s possession was not innocent because he "knew the pills were being given to him illicitly on school grounds," which was "why it [went] on in secret" in the locker room. Based on its findings, the juvenile court concluded that the innocent possession defense outlined in Miller was inapplicable. See Miller, 2008 UT 61, ¶ 22, 193 P.3d 92 (providing that a person is not guilty of possession of a controlled substance if (1) the controlled substance was held innocently and (2) the possession was transitory).
¶ 10 C.C.R. appeals, arguing that his possession was innocent and therefore, the juvenile court erred in its adjudication of delinquency.[6] According to C.C.R., the evidence does not support the juvenile court's finding that he was not acting in response to threats when he took the pill from B.O. "A lower court's interpretation of binding case law presents a question of law which we *1109 review for correctness." State v. Leyva, 951 P.2d 738, 741 (Utah 1997). In reviewing C.C.R.'s challenge to the sufficiency of the evidence, we "must consider all the facts, and all reasonable inferences which may be drawn therefrom, in a light most favorable to the juvenile court's determination." In re V.T., 2000 UT App 189, ¶ 8, 5 P.3d 1234. We will reverse that determination "only when it is `against the clear weight of the evidence, or if [we] otherwise reach[] a definite and firm conviction that a mistake has been made.'" Id. (quoting State v. Walker, 743 P.2d 191, 193 (Utah 1987)).
¶ 11 Because the defense of innocent possession would "act to negate an element of the charged offense," the State must disprove it beyond a reasonable doubt, once the accused "produce[s] some evidence of the defense." See State v. Drej, 2010 UT 35, ¶ 15, 233 P.3d 476 (internal quotation marks omitted). However, even in the context of affirmative defenses, "credibility is an issue for the trier of fact." See State v. Dunn, 850 P.2d 1201, 1213 (Utah 1993) (affirming the jury's rejection of the defendant's affirmative defense of compulsion). "[W]e defer to the juvenile court because of its advantaged position with respect the parties and the witnesses in assessing credibility and personalities." In re S.L., 1999 UT App 390, ¶ 20, 995 P.2d 17 (internal quotation marks omitted).
¶ 12 C.C.R. argues that the juvenile court failed to consider his innocent possession defense in violation of the Utah Supreme Court's decision in State v. Miller, 2008 UT 61, 193 P.3d 92. In Miller, the defendant was convicted of unlawful possession of a controlled substance. See id. ¶ 1. The defendant claimed that he found a bottle of prescription pills when he was cleaning his home after he hosted a party for some of his employees. See id. ¶ 6. He asserted that he slipped it into his pocket with the intent to remove it from the reach of his grandchildren and then to return it to its owner. See id. Before he could do so, a police officer arrived at his home to arrest him on other charges of intoxication and abuse of the 911 system.[7]See id. ¶ 7. The arresting officer discovered the pills during a search incident to arrest.
¶ 13 At trial on the possession charge, the defendant in Miller requested a jury instruction on the affirmative defense of innocent possession, which he had patterned on the innocent possession instruction given in weapons offenses. See id. ¶ 10. The trial court refused to give the instruction, and the jury convicted the defendant of the charges. See id. ¶ 11. On appeal, the Utah Supreme Court reversed and remanded for a new trial. See id. ¶ 24. In doing so, it held that "the term `possess' as used in [the possession of a controlled substance statute] excludes temporary possession of a controlled substance for the purpose of returning it to its lawful owner." Id. ¶ 24. Therefore, the Miller court directed that the jury at the new trial be instructed that the defendant's possession of the controlled substance was not unlawful if "(1) the controlled substance was obtained innocently and held with no illicit or illegal purpose, and (2) the possession of the controlled substance was transitory; that is, the defendant took adequate measures to rid himself of possession of the controlled substance as promptly as reasonably possible." See id. However, the supreme court also explained that "[i]t will be for the jury to decide whether, given this instruction along with the facts [the defendant] presente[d], his possession was innocent." Id.
¶ 14 C.C.R. asserts that because he "took the pill under some threat," the juvenile court erred by refusing to consider his innocent possession defense under Miller. Contrary to C.C.R.'s suggestion, the juvenile court did not refuse to consider his innocent possession defense. Rather, the juvenile court made specific findings that support its conclusion that the defense did not apply. C.C.R. admits that the innocent possession defense is limited to situations in which the controlled substance was obtained innocently and the possession was transitory. See id. ¶ 22. The juvenile court found beyond a reasonable doubt that C.C.R.'s possession of *1110 the pill met neither of these requirements. The juvenile court determined that C.C.R.'s version of events was not credible. Instead, the court accepted the account offered by B.O., which was corroborated by C.C.R.'s own statement to the investigating police officer and the testimony of First Student and Second Student. As a result, the juvenile court found, beyond a reasonable doubt, that (1) C.C.R. was not intimidated or threatened into accepting the pill, but instead accepted it because he did not want to be called names and wanted to "fit in," and (2) C.C.R.'s claim that he intended to throw the pill away was not believable. Either one of those findings would render the innocent possession defense adopted by Miller inapplicable.
¶ 15 Nevertheless, C.C.R. contends that because he advanced the affirmative defense and testified that he accepted the pill because he had been threatened and intended to discard it at the first opportunity, we must reverse the juvenile court's conclusion that C.C.R. is delinquent. Essentially, C.C.R. contends that the State's burden to disprove his affirmative defense beyond a reasonable doubt means that the presentation of evidence that could support an affirmative defense, even where contrary evidence is presented, results in an automatic acquittal. We do not agree.
¶ 16 What C.C.R. really asks us to do is to disregard the credibility determinations made by the juvenile court and to make the opposite assumptions as to which version of events is accurate while reassessing the evidence. However, the juvenile courts are given wide latitude "based upon not only the court's opportunity to judge credibility firsthand, but also based on the juvenile court judges' special training, experience and interest in this field, and devoted attention to such matters." In re E.R., 2001 UT App 66, ¶ 11, 21 P.3d 680 (omissions and internal quotation marks omitted). While we have only the record of the proceedings, the juvenile court heard the witnesses testify, observed their demeanor, and was in the best position to make the credibility determination. We defer to the juvenile court's advantaged ability to assess which witnesses were more believable.
¶ 17 In State v. Dunn, 850 P.2d 1201 (Utah 1993), the Utah Supreme Court rejected an argument in the context of a jury verdict which is similar to C.C.R.'s position regarding the role of credibility determinations in relation to the State's burden of disproving affirmative defenses. See id. at 1213-14. There, the defendant argued that his convictions for aggravated kidnapping and reckless manslaughter should be reversed because the State had not met its burden of disproving the defendant's compulsion defense. As in this case, the defendant in Dunn argued that the two witnesses who provided testimony contrary to the defense were not credible, and that the remaining evidence supported his affirmative defense. See id. at 1213. Thus, the defendant claimed that the jury's guilty verdict must be reversed because the State had not disproved his affirmative defense of compulsion. See id. The Utah Supreme Court disagreed, explaining that "credibility is an issue for the trier of fact." Id. Because the jury apparently believed the testimony challenged by the defendant, and that testimony was sufficient to disprove his defense of compulsion, the supreme court concluded that the State had met its burden to disprove the affirmative defense beyond a reasonable doubt. See also State v. Miller, 2008 UT 61, ¶ 24, 193 P.3d 92 (noting that "[i]t will be for the jury to decide whether" the possession was innocent); State v. Buck, 2009 UT App 2, ¶ 14, 200 P.3d 674 (affirming the jury's finding that the defendant was guilty of theft, despite the defendant's affirmative defense, because it was "perfectly appropriate for the jury to reject a reasonable hypothesis presented by the defense"). We see no reason for a different rule where the judge serves as the trier of fact.
¶ 18 Consequently, we conclude that the juvenile court's finding that C.C.R.'s trial testimony was not credible and its adoption of findings consistent with the other evidence and testimony at trial were appropriate. See Buck, 2009 UT App 2, ¶ 14, 200 P.3d 674. Because the evidence was sufficient to support those findings, we affirm the juvenile court's conclusion that C.C.R. is delinquent. In doing so, we do not mean to minimize the impact of prior incidents of bullying or C.C.R.'s general desire to "fit in" with other *1111 students. However, the juvenile court concluded that when C.C.R. obtained the pill, he accepted it in order to be perceived favorably by his peers. The fact that what was described by the juvenile court as a "bad decision" was motivated by peer pressure is as unfortunate as it is common. We see nothing in Miller suggesting that proof that the accused obtained a controlled substance after succumbing to peer pressure negates the element of possession.
¶ 19 Affirmed.
¶ 20 WE CONCUR: WILLIAM A. THORNE JR., and MICHELE M. CHRISTIANSEN, Judges.
NOTES
[1] The parties stipulated at trial that the pill found in C.C.R.'s pants pocket was oxycodone.
[2] It appears that C.C.R. began writing the statement, but then one of his teachers acted as a "scribe" and C.C.R. dictated the rest of the statement to her.
[3] The record includes a photocopied version of the witness statement on which only part of this additional sentence appears. However, the phrases "I took it willingly," "did not want to," and "not a pussy" are discernable.
[4] C.C.R. alleged that a student who did not testify at trial threatened that, if C.C.R. did not accept the pill, a different student would beat him.
[5] B.O., a recent transfer student, testified that he brought the pills to school in an effort to "fit in" and that he did not expect money for the pill, but that he could not remember what he was expecting in exchange.
[6] C.C.R. also challenged the legality of the juvenile court system for the first time on appeal but withdrew that issue at oral argument. He did not challenge the juvenile court's rejection of his compulsion defense.
[7] These charges were the result of the defendant's dispute with an escort service that was attempting to collect a fee for "showing up" in response to a telephone order apparently made by someone who attended the party. See State v. Miller, 2008 UT 61, ¶¶ 3-6, 193 P.3d 92.